### The WEST COAST MERCANTILE CO.
### v.
### UNITED STATES.
### C.D. 3399; Protest 65/24874–78993.

United States Customs Court,
Second Division.
April 10, 1968.

Stein & Shostak, Los Angeles, Cal. (Marjorie M. Shostak, Los Angeles, Cal., of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Mollie Strum, New York City, Trial Atty.), for defendant.

Before RAO, FORD and BECKWORTH, Judges.

BECKWORTH, Judge.

The merchandise involved in this case consists of shelf brackets of iron or steel, imported from the United Kingdom and entered at the port of Los Angeles on January 7, 1963. It was assessed with duty at 19 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T.D. 54108, as articles, not specially provided for, composed wholly or in chief value of iron or steel. It is claimed to be dutiable at 7½ per centum ad valorem under paragraph 312 of said tariff act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas.Dec. 121, T.D. 52739, as angles or other structural shapes of iron or steel.

The pertinent provisions of the tariff act, as modified, are as follows:

Paragraph 397, as modified by T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*      \*      \*      \*      \*      \*      \*      \*      \*

Composed wholly or in chief value of iron, steel, \* \* \*, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*      \*      \*      \*      \*      \*      \*      \*      \*

Other, composed wholly or in chief value of iron, steel, \* \* \*, or aluminum (except the following: \* \* \*) .................. 19% ad val.

Paragraph 312, as modified by T.D. 52739:

Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, and deck and bulb beams, together with all other structural shapes of iron or steel:

Not assembled, manufactured or advanced beyond hammering, rolling, or casting ....... 0.1¢ per lb.

Machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting ...... 7½% ad val.

◆

The sole issue before the court is whether the shelf brackets at bar fall within the scope of the provisions in paragraph 312, supra, for angles and all other structural shapes of iron or steel.

At the trial, the record in West Coast Mercantile Co. v. United States, 56 Cust. Ct. 466, C.D. 2680, was incorporated herein. Reference is made to the opinion in that case for a summary of the testimony therein and for a description of the exhibits. The court held that shelf brackets were not structural shapes within the meaning of paragraph 312, supra, stating (pp. 475–476):

The cases decided on the subject at bar afford a faithful interpretation of the congressional intent and of what was meant by the words of the statute to embrace structural shapes. We are

quite aware that a structure may be a building, a ship, a bridge, an oil well casing, scaffolding, an airplane approach, or an iron bedstead, all among the innumerable possible kinds of structures, comprised of parts called structural members which are structural shapes. To be such a member, the prime purpose of the article must be to support the structure of which it is a part. It is, thus, not enough to say that bolts, nuts, nails, couplings, etc., are an integral part of a structure and, thus, are structural shapes. Integral as those articles are, their prime purpose is to *join together*, but they themselves are not structural members. Being integral alone, therefore, is *not enough to establish classification*. Unquestionably these articles lend strength to the structure, but such strength and support are incidental to their prime purpose. [Emphasis quoted.]

Referring to the shelf brackets in issue, the court added (pp. 476–477):

* * * We, however, do not accept that the said exhibits are such angles as are named in paragraph 312 of the tariff act, or that the *eo nomine* provision of the said paragraph for angles contemplated all angles of iron or steel without regard for their purpose. The paragraph contemplates angles which are structural shapes. A metal bookend might be in the shape and form of an angle, yet it would not qualify as a structural shape. The definitions and numerous citations reviewed hereinbefore set forth characteristics of structural shapes, but these are not possessed by the merchandise at bar as represented by exhibits 1, 2, 3, 4, and 8. Admittedly, they are shelf brackets; they support no structure. They do not lend strength, even incidental to the structure, nor were they designed to do so.

Examination of the physical articles (exhibits 1 through 4, and exhibit 8) demonstrates this quite clearly. Their physical appearance indicates processing beyond angles. The shelf brackets involved herein are not *ejusdem generis* with the articles designated by name in paragraph 312. They are articles of commerce commonly recognized and known as shelf brackets.

* * * The purpose and function of the shelf brackets before us is to support a shelf and not a structure, either heavy or light, large or small.

In the instant case, plaintiff has presented additional testimony to show the use of the shelf brackets and the manner in which they are assembled with shelves and affixed to the wall. It is claimed that the evidence establishes that the articles at bar possess the characteristics and properties of structural shapes and that since they have no function other than a load carrying one, they are properly classifiable as structural shapes under paragraph 312, supra.

Plaintiff's first witness was Cecil Mansour, who also testified in the previous case. He is the president of West Coast Mercantile Co., importers and distributors of hardware. He testified that his firm sells shelf brackets to wholesale hardware jobbers and retail hardware stores, mainly on the west coast and that he had seen such merchandise offered for sale in the establishments of his customers. He said they were usually displayed in bins, one bin to a size. He had seen them used to hold up shelves in garages, homes, and storerooms. One side of the bracket is affixed to the wall and the top is affixed to the shelf by screws or bolts which fit through the holes in the brackets. Usually three or four brackets are used to a shelf, spaced about 3 feet apart. According to the witness, it is not difficult to attach the brackets to a wall, and a shelf can be put up in a home or garage where there has been no shelf. Shelves can also be made longer by adding more brackets. He had seen such shelves used for holding cans of paint, tools, luggage and other heavy articles.

The witness was read the following definition of bracket from "Webster's

New International Dictionary, Second Edition, Unabridged, 1936":

1. An overhanging member, simple or composite, projecting from a wall or pier or other body to support weight falling outside of the same, or a similar piece to strengthen an angle. * * * Bracket is the general term for all projecting supports, whether a piece of projecting timber or stone, a triangular frame, or of some other form; and includes various forms which are ordinarily called by specific names, such as the brace, cantilever, console, corbel, strut, cul-de-lampe, modillion * * *.

The witness was in agreement with this definition.

Plaintiff's second witness was Roy Soderman, who is presently employed by E. Cooper Lumber Co., as a salesman in the hardware department. He had become familiar with shelf brackets such as those involved herein by selling them to consumers. Some customers, such as contractors and carpenters, know exactly what they want, but in the case of others, especially housewives, working women, and students, he inquires about the intended use in order to advise them as to the proper size and the method of attaching them to the wall. He pointed out that if brackets are applied in the wrong way or if too much weight is put on them, they will tear away from the wall. He described the method of affixing them, either where the screw can take a grip right into the wood of a wall, or, by the use of molly screws or toggle bolts, where the bracket must be attached to a plastered wall. Screws are also used to attach the shelf to the bracket. He had seen shelf brackets used in his own home and other residences in various rooms and in garages. He was in agreement with the definition of "bracket," supra.

The witness stated that decorative wall brackets have different purposes from shelf brackets, do not have a rib, and have no structural attribute. The shelf brackets before the court are used to support heavy weights in comparison to size.

He pointed out that it does not take many cans of paint to make up 120 pounds.

Plaintiff claims that these shelf brackets were designed and are used to support a maximum load with a minimum amount of material, combining the greatest strength with the least weight, and that, therefore, they are "structural shapes" as that term is commonly understood. We are not in accord with that conclusion. As stated in the previous case, the purpose and function of these shelf brackets is to support a shelf and not a structure. Thus, whether or not they support a maximum load with a minimum amount of material, they are not *structural* shapes. James Loudon & Co., Inc., et al. v. United States, 47 CCPA 73, C.A.D. 731; United States v. Humble Oil & Refining Co., Leslie B. Canion, et al., 46 CCPA 138, C.A.D. 717; Inter Continental Equipment Co., Rohner Gehrig & Co., Inc. v. United States, 48 CCPA 63, C.A.D. 765. In the *Humble Oil* case, the court pointed out (46 CCPA p. 140):

* * * We are unable to agree with the apparent holding that every element which is a part of a structure is a "structural shape" if it is subjected therein to forces and loads such as tension, compression and the like. * *

Many of the leading cases on structural shapes are discussed in the opinion in the incorporated case. In the cases where the merchandise was held to be a structural shape, its primary function was to support a structure. Simon, Buhler & Baumann (Inc.) v. United States, 8 Ct.Cust. Appls. 273, T.D. 37537 (a ponderous brewery mash filter); Judson Freight Forwarding Co. v. United States, 20 CCPA 229, T.D. 46038 (steel angles which were used for structural purposes in ceilings, walls, and partitions in buildings); United States v. Winkler-Koch Engineering Co., 41 CCPA 121, C.A.D. 540 (units which were parts shaped for use in forming oil well casing, which casings were held to be structures); United States v. Frank, 15 Ct.Cust.Appls. 97, T.D. 42184 (steel sheet piling, "used in the construction of dams, including

core walls after installation, for building foundation work, including retaining walls and foundation piers, for dock walls, for elevator shafts, and for breakwaters."); United States v. Henry L. Exstein Co., Inc., 16 Ct.Cust.Appls. 328, T.D. 43079 (steel bars for reinforcing concrete used in making floors, conduits, bridges, walls and practically every structure where concrete is used).

In United States v. Frank, supra, the court said as to the sheet piling before it (15 Ct.Cust.Appls. p. 103):

> * * * It is so made as to combine the greatest strength with the least weight and is exclusively used in erecting structures. * * *

While the *Judson Freight Forwarding* case, supra, held that the tariff provision for "structural shapes" was not limited to heavy structural shapes, it is quite clear that the small angles there involved were used in supporting structures. The court said (20 CCPA p. 233):

> It appears from the record that steel angles having legs or webs measuring less than three inches are made in bar mills and are sometimes referred to in the trade as bar-mill size angles and as small shapes, the words "bar-mill size" being merely descriptive of angles rolled in those mills. Angles having legs or webs measuring more than three inches are rolled in so-called "structural mills."

> It clearly appears from the record that the involved angles or small shapes are used substantially for structural purposes in ceilings, walls, and partitions in buildings; as "tieings or anchors to keep a building from spreading"; for "building up joists"; as "steel trusses, roof trusses," in ga-

rages, factories, and "over courts in hotels"; in the construction of columns, posts, and in—

> skylight construction and roof purlins for supporting the tile roofing, and in the bracing of latticed members, columns, sidewalks, supporting greenhouse construction, elevator guides;

> in the framework of pump houses and other like structures; in the construction of oil tanks; in oil-well derricks, ranging from 15 feet to 115 feet in height; in making of booms for traveling cranes; and also in the manufacture of agricultural implements, road and grading machinery, hoisting and conveying machines, fences, safes, automobiles, bedsteads, and in a variety of other articles requiring light sections.

It is clear that the shelf brackets before us in no way support a structure; they are merely attached to a structure, in some cases only to the plaster, and serve to hold up shelves on which relatively heavy articles may be placed. In fact, the witness Soderman said that if the brackets were not properly applied, they would tear away from the wall. Certainly, they do not support it in any way. We are in complete accord with the holding in the incorporated case that "the shelf brackets at bar are not such articles as constitute structural shapes within the purview of paragraph 312 of the Tariff Act of 1930, as modified, supra." The additional testimony and exhibits presented here do not establish any facts requiring a different conclusion.

For the reasons stated, the protest is overruled and judgment will be entered for the defendant.

RAO, C. J., and FORD, J., concur.