(C.D. 4459)

TRANS-ATLANTIC COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 28, 1973)

*Allerton deC. Tompkins* for the plaintiff.

*Harlington Wood, Jr.,* Assistant Attorney General (*Urban Mulvehill, Andrew P. Vance, Joseph I. Liebman,* and *John A. Gussow,* trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

FORD, Judge: This case involves the proper classification of metal shelf brackets described on the invoice as "1230X1 Shelf Brackets

Black Jap" which were classified under item 647.03, Tariff Schedules of the United States, which provides as follows:

> Hinges; and fittings and mountings not specially provided for, suitable for furniture, doors, windows, blinds, staircases, luggage, vehicle coach work, caskets, cabinets, and similar uses; all the foregoing, of base metal, whether or not coated or plated with precious metal:
>> Not coated or plated with precious metal:
>>> Of iron or steel, of aluminum, or of zinc:

|         |        | *   | *   | *   | *   | *   | *   | *   |              |
|---------|--------|-----|-----|-----|-----|-----|-----|-----|--------------|
| 647.03  | Other _____ |     |     |     |     |     |     |     | 19% ad val.  |

Plaintiff in its original protest and by amendment has set forth numerous claims. However, only two claims are pressed and the others are therefore deemed abandoned and are accordingly dismissed. The primary claim of plaintiff is under item 609.84, Tariff Schedules of the United States, which reads as follows:

Schedule 6, part 2, subpart B:

Subpart B headnotes:

1. This subject covers iron and steel, their alloys, and their so-called basic shapes and forms, and in addition covers iron or steel waste and scrap.

> *     *     *     *     *     *     *

3. Forms and Condition of Iron or Steel.—For the purposes of this subpart, the following terms have the meanings hereby assigned to them:

> *     *     *     *     *     *     *

(d) Bars: Products of solid section not conforming completely to the respective specifications set forth herein for blooms, billets, slabs, sheet bars, wire rods, plates, sheets, strip, wire, rails, joint bars, or tie plates, and which have cross sections in the shape of circles, segments of circles, ovals, triangles, rectangles, hexagons, or octagons. Deformed concrete reinforcing bars are hot rolled steel bars, of solid cross section, having deformations of various patterns on their surfaces.

> *     *     *     *     *     *     *

(j) Angles, shapes, and sections: Products which do not conform completely to the respective specifications set forth herein for blooms, billets, slabs, sheet bars, bars, wire rods, plates, sheets, strip, wire, rails, joint bars, or tie plates, and do not include any tubular products.

> *     *     *     *     *     *     *

Angles, shapes, and sections, all the fore-
going, of iron or steel, hot rolled, forged,
extruded, or drawn, or cold formed or
cold finished, whether or not drilled,
punched, or otherwise advanced; sheet
piling of iron or steel:
 Angles, shapes, and sections:
  Hot rolled; or, cold formed and
  weighing over 0.29 pound per
  linear foot:

\*  \*  \*  \*  \*  \*  \*

   Drilled, punched, or other-
   wise advanced:

609.84     Other than alloy iron or
      steel _____  7.5% ad val.

Alternatively, plaintiff contends the involved shelf brackets are
properly subject to classification under the following language con-
tained in item 652.94, Tariff Schedules of the United States:

Hangars and other buildings, bridges,
bridge sections, lock-gates, towers, lat-
tice masts, roofs, roofing frameworks,
door and window frames, shutters, bal-
ustrades, columns, pillars, and posts, and
other structures and parts of structures,
all the foregoing of base metal:
 Of iron or steel:

\*  \*  \*  \*  \*

  Columns, pillars, posts, beams,
  girders, and similar structural
  units:
   Not in part of alloy iron or
   steel:

\*  \*  \*  \*  \*  \*  \*

652.94     Other _____  7.5% ad val.

The record consists of the testimony of two witnesses, one called on
behalf of each party, three exhibits, plaintiff's exhibit 1 and defend-
ant's exhibits A and B, the official papers which were received in
evidence without being marked and the following stipulations ap-
proved by the court:

It Is Hereby Stipulated and Agreed by and between counsel
for the Plaintiff and the Assistant Attorney General for the
United States, Defendant, subject to the approval of the court,
that the articles under protest, invoiced as "1230X1 Shelf Bracket
Black Jap", have been cold formed, weigh over 0.29 pound per
linear foot, and are composed of iron, not alloy iron. They are
made in one piece of "T"-iron, and, to produce the imported
item, a portion of the edge or web (leg of the "T") between the

wall and the supporting surface has been removed, and the iron has then been bent and the edges (along the portion that has been removed) have been brought together and welded. The shelf brackets, in use, are attached to some strong part of a structure, and, as attached, are used to support, among other things, heavy shelves and seats.

It is hereby stipulated and agreed by and between counsel for the plaintiff, and the Assistant Attorney General for the United States, defendant, that the articles under protest, invoiced as "1230X1 Shelf Bracket Black Jap" are commonly known as "shelf brackets", and they are able to bear a load of 250 kilograms on the middle of the supporting flange.

Richard Muenzer, vice president of plaintiff, was called to identify a sample of the imported shelf brackets which was received in evidence as plaintiff's exhibit 1. The witness testified exhibit 1 came out of the involved shipment but was painted after importation by error. At the time of importation, the bracket had a "black Japan finish" which is a black high gloss finish.

Defendant called as its witness, Lewis Gibbs, product administrator for structural and plate products for United States Steel Corporation. Mr. Gibbs holds a degree in civil engineering and has taken courses in metallurgy and advanced business administration. The witness' positions with United States Steel required him to be thoroughly familiar with the types of products with which he was working. He is also familiar with the processes and operations performed upon the products which his firm sells. The witness having worked in the mill during his first two years of employment is familiar with the operation of the production of blooms and billets, slabs and sheet bars, bars, wire rods, plates and sheets, strip, wire, rails, joint bars, tie plates, angles, shapes and sections, all of which have a uniform cross section.

Based upon an examination of plaintiff's exhibit 1, Mr. Gibbs testified he is able to determine the basic iron or steel form used to make said exhibit as well as the processes used. The basic form, according to the witness, is a rolled tee similar to the article produced by his company and received in evidence as defendant's exhibit A. A rolled tee is produced as follows:

THE WITNESS: A steel billet—let us say it is approximately five inches square—is heated to approximately twenty-two hundred degrees Fahrenheit and passed through a series of rolls which successively roll it down to this shape and in order to accomplish that, the finished section must be of uniform cross section throughout its length.

BY MR. LIEBMAN: (Cont'g)

Q. By uniform cross section, what do you mean?—A. I mean

that if you cut it transversely at any point along its length, the cross section would be the same throughout.

Q. In other words, it will always appear to be a "T" as you face the article from its end?—A. Yes.

A rolled tee, Mr. Gibbs testified, is not capable of being further rolled but it may be fabricated. Fabrication involves cutting, bending, drawing, welding, riveting or joining. Mr. Gibbs also testified that he is familiar with the terms "angles, shapes and sections" and that all have the common characteristic of a uniform cross section. A rolled section such as exhibit A conforms to the definition of "bar" contained in headnote 3(d) and "angles, shapes and sections" in headnote 3(j) of subpart B, part 2 of schedule 6 of the Tariff Schedules of the United States.

While geometrically exhibit 1 is an angle, it does not fit what is commonly known to be an angle in steel mill terminology according to witness Gibbs. Defendant's exhibit B is an angle in steel mill terminology. Said exhibit is produced by hot-rolling a billet down to this shape which has a uniform cross section.

On cross-examination, Mr. Gibbs testified that drilling or punching holes is fabrication which removes the article from the designation of shape. A half round is a bar but is not a shape. The witness admitted he had never been in the producer's plant in Denmark and does not know if the rolled tee produced by that firm had a uniform cross section. The bending or drilling of a tee bar destroys its status as a shape.

The question of the necessity of a uniform cross section for angles, shapes and sections under items 609.80–609.90, Tariff Schedules of the United States, as urged by defendant in its brief, and the testimony adduced by it from Mr. Gibbs, as well as the information contained in the Tariff Classification Study – Seventh Supplemental Report will first be considered.

In the case of *Pistorino & Company, Inc.* v. *United States*, 69 Cust. Ct. 48, C.D. 4373, 350 F. Supp. 1392 (1972), the same argument was advanced by the defendant, and the court made the following observation:

> Defendant contends that in order to be classifiable under item 609.88, *supra*, the articles must have a uniform cross section throughout their length as indicated in the Seventh Supplemental Report to the Tariff Classification Study. It is to be noted that neither headnote 3(j) nor the items themselves contain such a requirement. Therefore, the Tariff Commission's report, even if considered part of the legislative history, cannot add a requirement not included in the statute itself. *American Customs Brokg. Co., Inc., a/c Hamakua Mill Co.* v. *United States*, 58 CCPA 45, C.A.D. 1002 (1970); *Great Western Sugar Co., et al.* v. *United*

*States*, 59 CCPA 56, C.A.D. 1038 (1972). Some of the definitions in headnote 3, i.e., 3(b), 3(c), 3(d), 3(e), 3(f), 3(i), and 3(k) refer to cross-section requirements. An omission to make any reference to cross section in headnote 3(j), covering angles, shapes and sections, cannot be considered an oversight.

The court reaffirms its position taken in the *Pistorino* case, *supra*, that uniform cross section is not a requirement included in the statute.

Based upon the record, it is uncontroverted that the shelf bracket involved is made from a rolled tee and that a rolled tee fits within the definition of "bar" as contained in the headnote 3(d), *supra*. However, the shelf bracket does not in its present condition conform to said definition.

Since headnote 3(j), *supra*, defines angles, shapes and sections as those products such as bars, which do not conform to the specifications set forth, the next consideration is whether the imported shelf brackets are angles, shapes and sections as provided for in item 609.84, *supra*. If the merchandise involved is one of these items, it does meet the requirements of being cold formed, weighing over 0.29 pound per linear foot, is drilled, punched or otherwise advanced, and is made of other than alloy, iron or steel.

Defendant contends that while the rolled tee, from which the shelf bracket is made, is a basic shape or form, the importation is a completely fabricated article upon which no further work is required to fit it for its specific use and therefore is an article of commerce and no longer a basic shape or form. *Stengel* v. *United States*, 2 Ct. Cust. Appls. 137, T.D. 31663 (1911).

It is noted that the superior heading to item 609.84, *supra*, contains the language "whether or not drilled, punched, or otherwise advanced." This is a clear indication of an intent to include an advancement even to the point of dedication so long as the article remains material. *Commercial Shearing & Stamping Company* v. *United States* (*Guadalupe Industrial Supply Company, Inc., Party-in-Interest*), 65 Cust. Ct. 91, C.D. 4060, 317 F. Supp. 750 (1970), *aff'd*, 59 CCPA 203, C.A.D. 1067 (1972).

The imported merchandise is without dispute a finished article known in the trade as a shelf bracket. It has therefore passed the state of being material and is in fact a separate and distinct article of commerce. Such an article is not within the purview of item 609.84, *supra*.

The alternative contention of plaintiff under item 652.94, *supra*, which provides for columns, pillars, posts, beams, girders and similar structural units has been rejected under the provisions of the Tariff Act of 1930 for merchandise such as is involved herein. *The West Coast Mercantile Co.* v. *United States*, 60 Cust. Ct. 397, C.D. 3399, 283

F. Supp. 412 (1968); *West Coast Mercantile Co.* v. *United States*, 56 Cust. Ct. 466, C.D. 2680 (1966).

In the case at bar, the statutory language of the Tariff Schedules of the United States is sufficiently similar to the language of the Tariff Act of 1930 for the court to utilize the decisions under the latter. The change of the language in the Tariff Schedules of the United States to "structural units" rather than "structural shapes" in the Tariff Act of 1930 does not materially affect the prior judicial decisions insofar as they relate to the merchandise involved.

In the decision in the case of *United States* v. *Humble Oil & Refining Co., Leslie B. Canion, et al.*, 46 CCPA 138, C.A.D. 717 (1959), it was stated:

> * * * Whether a particular article falls within the meaning of that term [structural shapes] must be determined on the basis of the particular circumstances of the case under consideration, including the purpose for and manner in which the article is used, as well as whether or not it forms a part of a structure.

Considering the foregoing principles, in light of the merchandise under consideration, the court finds the purpose of the shelf brackets as stipulated is to "support, among other things, heavy shelves and seats." The manner of attachment was stipulated as being "attached to some strong part of a structure." The parties further stipulated that said brackets "are able to bear a load of 250 kilograms on the middle of the supporting flange."

In *West Coast Mercantile*, C.D. 3399, *supra*, the court quoted from the prior case, C.D. 2680, *supra*, as follows:

> * * * The court held that shelf brackets were not structural shapes within the meaning of paragraph 312, *supra*, stating (pp. 475–476):
> The cases decided on the subject at bar afford a faithful interpretation of the congressional intent and of what was meant by the words of the statute to embrace structural shapes. We are quite aware that a structure may be a building, a ship, a bridge, an oil well casing, scaffolding, an airplane approach, or an iron bedstead, all among the innumerable possible kinds of structures, comprised of parts called structural members which are structural shapes. To be such a member, the prime purpose of the article must be to support the structure of which it is a part. It is, thus, not enough to say that bolts, nuts, nails, couplings, etc., are an integral part of a structure and, thus, are structural shapes. Integral as those articles are, their prime purpose is to *join together*, but they themselves are not structural members. Being integral alone, therefore, is *not enough to establish classification*. Unquestionably these articles lend strength to the structure, but such strength and support are incidental to their prime purpose. [Emphasis quoted.]

Referring to the shelf brackets in issue, the court added (pp. 476–477):

> * * * We, however, do not accept that the said exhibits are such angles as are named in paragraph 312 of the tariff act, or that the *eo nomine* provision of the said paragraph for angles contemplated all angles of iron or steel without regard for their purpose. The paragraph contemplates angles which are structural shapes. A metal book end might be in the shape and form of an angle, yet it would not qualify as a structural shape. The definitions and numerous citations reviewed hereinbefore set forth characteristics of structural shapes, but these are not possessed by the merchandise at bar as represented by exhibits 1, 2, 3, 4, and 8. Admittedly, they are shelf brackets; they support no structure. They do not lend strength, even incidental to the structure, nor were they designed to do so.
>
> Examination of the physical articles (exhibits 1 through 4, and exhibit 8) demonstrates this quite clearly. Their physical appearance indicates processing beyond angles. The shelf brackets involved herein are not *ejusdem generis* with the articles designated by name in paragraph 312. They are articles of commerce commonly recognized and known as shelf brackets.
>
> * * * The purpose and function of the shelf brackets before us is to support a shelf and not a structure, either heavy or light, large or small.

The decision in C.D. 3399, *supra*, then made the following observation:

> Plaintiff claims that these shelf brackets were designed and are used to support a maximum load with a minimum amount of material, combining the greatest strength with the least weight, and that, therefore, they are "structural shapes" as that term is commonly understood. We are not in accord with that conclusion. As stated in the previous case, the purpose and function of these shelf brackets is to support a shelf and not a structure. Thus, whether or not they support a maximum load with a minimum amount of material, they are not *structural* shapes [emphasis quoted]. *James Loudon & Co., Inc., et al.* v. *United States*, 47 CCPA 73, C.A.D. 731; *United States* v. *Humble Oil & Refining Co., Leslie B. Canion, et al.*, 46 CCPA 138, C.A.D. 717; *Inter Continental Equipment Co., Rohner Gehrig & Co., Inc.* v. *United States*, 48 CCPA 63, C.A.D. 765. In the *Humble Oil* case, the court pointed out (p. 140):
>
> > * * * we are unable to agree with the apparent holding that every element which is a part of a structure is a "structural shape" if it is subjected therein to forces and loads such as tension, compression and the like. * * *

It is evident that the shelf brackets in no way support a structure. The fact that they are attached to a structure does not make them a

structural unit even if they are able to bear a maximum load with a minimum of material. *United States* v. *Humble Oil, supra.*

For the reasons stated, the protest is overruled. Judgment will be entered accordingly.