SANDVIK STEEL, INC. *v.* UNITED STATES

Court Nos. 66/19351, etc.

(Decided September 8, 1975)

*Rode & Qualey* (*John S. Rode* of counsel) for the plaintiff.
*Rex E. Lee,* Assistant Attorney General (*Frank J. Desiderio,* trial attorney), for the defendant.

NEWMAN, Judge: This action (covering 104 consolidated protests) concerns the proper dutiable classification of "shoe die knife steel", also referred to as "clicker die steel", imported from Sweden during the period of September 1963 through March 1969, and entered at the port of New York.

The merchandise was assessed with duty at the rates of 19, 17, or 15 per centum ad valorem, depending upon the date of entry, pursuant to item 657.20 of the Tariff Schedules of the United States, or under item 657.20 as modified by T.D. 68-9, covering articles of iron or

steel which are not more specifically provided for elsewhere in the tariff schedules.

Plaintiff claims that the merchandise is more specifically provided for as "angles, shapes, and sections" under item 609.84 or item 609.88, TSUS, or under item 609.84 or item 609.88 as modified by T.D. 68–9, depending upon the weight per linear foot, and accordingly is properly dutiable at the following rates, depending upon the date of entry: respecting the steel weighing over 0.29 pound per linear foot, 7.5, 7, or 6.5 [sic] per centum ad valorem; respecting the steel weighing not over 0.29 pound per linear foot, 8.5, 8, or 7.5 [sic] per centum ad valorem.[1]

I have concluded that plaintiff's claimed item numbers should be sustained.

## STATUTES INVOLVED [2]

Assessed under:

Schedule 6, part 3, subpart G:

Subpart G headnote:

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

\*   \*   \*   \*   \*   \*   \*

Articles of iron or steel, not coated or plated with precious metal:

\*   \*   \*   \*   \*   \*   \*

Other articles:

\*   \*   \*   \*   \*   \*   \*

657.20     Other_____   \* \* \*

Claimed under:

Schedule 6, part 2, subpart B:

Part 2 headnotes:

1. This part covers \* \* \* base metals \* \* \* and their so-called basic shapes and forms \* \* \*. \* \* \* This part does not include—

\*   \*   \*   \*   \*   \*   \*

(iv) other articles specially provided for elsewhere in the tariff schedules, of parts of articles.

\*   \*   \*   \*   \*   \*   \*

---

[1] The respective rates of duty in 1969 under items 609.84 and 609.88 as modified by T.D. 68–9 were 7 and 8 per centum ad valorem, rather than 6.5 and 7.5 per centum ad valorem, as claimed by plaintiff.

[2] The applicable rates of duty are omitted as they depend upon the date the merchandise was entered. The reduced rates are predicated upon T.D. 68–9.

Subpart B headnotes:

1. This subpart covers iron and steel, their alloys, and their so-called basic shapes and forms and in addition covers iron or steel waste and scrap.

*　　*　　*　　*　　*　　　*　　*

3. Forms and Condition of Iron or Steel.—For the purposes of this subpart, the following terms having the meanings hereby assigned to them.

*　　*　　*　　*　　*　　　*　　*

(j) Angles, shapes, and sections: Products which do not conform completely to the respective specifications set forth herein for blooms, billets, slabs, sheet bars, bars, wire rods, plates, sheets, strip, wire, rails, joint bars, or tie plates, and do not include any tubular products.

*　　*　　*　　*　　*　　　*　　*

Angles, shapes, and sections, all the foregoing, of iron or steel, hot rolled, forged, extruded, or drawn, or cold formed or cold finished, whether or not drilled, punched, or otherwise advanced; sheet piling of iron or steel:
  Angles, shapes, and sections:
    Hot rolled; or, cold formed and weighing over 0.29 pound per linear foot:

*　　*　　*　　*　　*　　　*　　*

      Drilled, punched, or otherwise advanced:

609.84         Other than alloy iron or steel_____ * * *

*　　*　　*　　*　　*　　　*　　*

    Cold formed and weighing not over 0.29 pound per linear foot:

609.88         Other than alloy iron or steel_____ * * *

## The Record

The record includes: the incorporated record in *Sandvik Steel, Inc.* v. *United States*, 66 Cust. Ct. 12, C.D. 4161, 321 F. Supp. 1031 (1971), an oral stipulation of the parties, the testimony of one witness for each of the parties,[3] various exhibits, and the official papers.

---

[3] Plaintiff's witness was Darrel Dean Biegert, its sales manager for industrial products, who also testified in the prior incorporated case. Defendant's witness was Lewis T. Gibbs, an executive of United States Steel Corporation.

There is no dispute as to any of the material facts.

Briefly, the record establishes that the merchandise is similar in all material respects to the shoe die knife steel in the prior *Sandvik* case; that the merchandise is composed wholly of steel, as that term is defined in headnote 2(g), schedule 6, part 2, subpart B; that the merchandise is cold rolled strip in coils, between 0.05 inch and 0.125 inch in thickness, and between 0.54 inch and 2.0 inches in width, having one or two cutting edges, in one of six types of profiles. In some specifications, the merchandise has gone through a section rolling process to provide a bevel configuration on the strip steel. The weight per linear foot of the merchandise in each of the entries is established by the official papers, which were received in evidence without objection.[4] Additionally, the merchandise is dedicated for and solely used in making clicker dies, which are employed in the cutting of various materials. In the prior *Sandvik* decision, the undersigned writing for the court found (66 Cust. Ct. at 15):

> It appears that shoe die knife steel is manufactured into dies by cutting pieces from the long coils to shorter lengths (⅛ inch to 10 feet), bending the pieces in a machine to the desired pattern or configuration, and securing the shape of the bent pieces by welding them with braces or screwing them into a board base. The imported knife steel is used to make dies "of an unending variety of shapes and sizes."

### Contentions of the Parties

Plaintiff urges that the shoe die knife steel is a material which requires substantial further manufacture to form a finished product suitable for its intended use (clicker dies); that shoe die knife steel falls within the definition of angles, shapes, and sections in headnote 3(j), inasmuch as it is made from strip but does not conform completely to the definition of strip in headnote 3(h);[5] and that items 609.84 and 609.88 are more specific provisions for the merchandise than is item 657.20.

Defendant, however, contends (brief, page 5) that the merchandise "although unquestionably a material for the manufacture of clicker dies and not yet advanced to the point of being unfinished knife or cutting blades, has been advanced to the status of articles of steel". Also, defendant urges (brief, page 6) that "shoe die knife steel would not be considered to be an angle, shape, or section by the domestic steel industry and, therefore, should not be considered such for purposes of tariff classification".

---

[4] The official papers, when offered and received in evidence without objection, may be considered by the court in the exercise of sound discretion for the truth of the matters recited. *W. T. Grant Company* v. *United States*, 38 CCPA 57, C.A.D. 440 (1950); *Israel Menchaca* v. *United States*, 48 Cust. Ct. 276, C.D. 2349 (1962).

[5] See footnote 7.

## Opinion

### 1.

In the prior *Sandvik* case, defendant successfully contended that shoe die knife steel is a "material" for making clicker dies, and therefore is not classifiable as unfinished [6] knives and cutting blades for power or hand machines under item 649.65 or item 649.67. While the Government's classification under item 657.20 prevailed in the prior case, plaintiff's present claims were not before the court. Consequently, the prior *Sandvik* case is not dispositive of the present issue.

As is evident from their respective contentions, neither party presently contests the prior ruling that the shoe die knife steel is a material rather than unfinished knives and cutting blades. In point of fact, plaintiff now relies upon that prior ruling to sustain its present claim that the merchandise is properly dutiable under the provisions for angles, shapes, and sections.

Defendant, however, insists that although the shoe die knife steel is a material, as successfully contended in the prior *Sandvik* case, nevertheless the subject merchandise is too far advanced to be classifiable as angles, shapes, and sections.

### 2.

Inasmuch as item 657.20, under which the merchandise was assessed, is a "basket" provision for articles of iron or steel "not more specifically provided for elsewhere in the tariff schedules" (headnote 1, schedule 6, part 3, subpart G), the dispute concerns the question of whether the shoe die knife steel is "more specifically provided for" as angles, shapes, and sections.

As statutorily defined in headnote 3(j), the term "angles, shapes, and sections" includes "products which do not conform completely to the respective specifications set forth herein for * * * strip * * *". Although the shoe die knife steel was made from strip, there is no dispute that the merchandise in its condition as imported does not conform completely to the specifications for strip set forth in headnote 3(h).[7] Hence, the merchandise falls squarely within the definition of angles, shapes, and sections in headnote 3(j).

---

[6] Pursuant to General Interpretative Rule 10(h).

[7] "Strip" is defined in headnote 3(h) as follows:

(h) *Strip:* A flat rolled product whether or not corrugated or crimped, in coils or cut to length, under 0.1875 inch in thickness, and if cold rolled, over 0.50 inch but not over 12 inches in width, or, if not cold rolled, not over 12 inches in width.

Plaintiff states that the shoe die knife steel does not completely conform to the specifications for strip in headnote 3(h), inasmuch as the merchandise is not flat. Moreover, by virtue of the Government's classification under item 657.20, it is presumed that the merchandise does not conform completely to the specifications for any of the forms of iron or steel defined in headnote 3.

*Pistorino & Company, Inc.* v. *United States*, 69 Cust. Ct. 48, C.D. 4373, 350 F. Supp. 1392 (1972), is a case in point construing the provisions for angles, shapes, and sections. There, metal stampings or blanks made from strip, dedicated to use in the manufacture of latch needles (knitting machine needles), which required substantial additional processing, were held properly dutiable as angles, shapes, and sections under item 609.88 rather than as unfinished latch needles under item 670.58. Pertinent to the present case are the following comments by Judge Ford, writing for the Second Division (69 Cust. Ct. at 53–54):

> * * * According to the Tariff Classification Study, Schedule 6, page 89, subpart B sets forth an orderly systematic arrangement which would apply to iron and steel, their alloys, and their basic shapes and forms in addition to iron and steel waste and scrap. It therefore logically follows that the provision for angles, shapes and sections includes a more advanced product than item 609.13 [strip] * * * *but is still a material. Burn Strauss, Inc.* v. *United States*, 62 Cust. Ct. 664, C.D. 3845, 305 F.Supp. 14 (1969). It is to be noted that the superior heading to item 609.88 includes the language "whether or not drilled, punched, or otherwise advanced." This is a clear indication that an advancement even to the point of dedication was intended to be included therein *so long as the article still remains material. Commercial Shearing & Stamping Company* v. *United States (Guadalupe Industrial Supply Company, Inc., Party in Interest)*, 65 Cust. Ct. 91, C.D. 4060, 317 F.Supp. 750 (1970) [*aff'd*, 59 CCPA 203, C.A.D. 1067, 464 F.2d 1048 (1972)]. [Emphasis added.]

> We have no difficulty in finding that the imported blanks are shapes which do not conform to the specifications set forth in headnote 3, schedule 6, part 2, subpart B. We further find that said blanks are dedicated to use as latch needle blanks but are not unfinished latch needles. * * *

*John V. Carr & Son, Inc.* v. *United States*, 72 Cust. Ct. 19, C.D. 4500 (1974), is another decision construing the term "angles, shapes, and sections". In *Carr*, certain side rails dedicated for and solely used as parts of railroad hopper cars were held properly dutiable as "parts" of railroad or railway cars under item 690.15, rather than as "angles, shapes, and sections" under item 609.80. Judge Maletz rejected the plaintiff's argument that the rails were materials requiring substantial further processing; finding instead that "in their imported condition, the involved rails were virtually ready for use only as a part of the railroad stock described in item 690.15 requiring as they did merely insubstantial further processing" (72 Cust. Ct. at 25). Significantly, the court also stated:

> It may well be that most angles, shapes, and sections are *ultimately* dedicated and used as parts of articles and that such *ultimate* use determines the form in which the angles, shapes and sections are made. See *United States* v. *The Singer Manufacturing*

*Company*, 37 CCPA 104, 106, 107, C.A.D. 427 (1950). But this scarcely means that all angles, shapes and sections are parts *per se*. Thus, if in its imported condition, an angle, shape or section has been processed or advanced in manufacture *only* to a point where substantial additional processing is necessary before it can be used as a part of a given article, the import would not be classifiable as a "part," but rather would be considered a material and thus (if meeting the other statutory requirements) classifiable under a provision for angles, shapes and sections. See e.g., *United States* v. *The Singer Manufacturing Company*, *supra*, 37 CCPA 104; *Associated Metals & Minerals Corp.* v. *United States*, *supra*, 65 Cust. Ct. 586.

\* \* \* \* \* \* \*

Moreover, even though many angles, shapes and sections may be advanced to the point where they are dedicated to use as parts, they still would be classifiable under the provisions for angles, shapes and sections if no specific provision for the part exists. For example, in *Commercial Shearing & Stamping Company* v. *United States*, *supra*, it was held that hemispherical shapes or heads—which were chiefly used as end closures on pressure containers designed and used for the transport and storage of compressed gases—were properly classified by the government as angles, shapes and sections under item 609.80— the same item that is involved here—rather than as articles of iron or steel, not specially provided for, under item 657.20, as claimed by plaintiff. While the record showed that the imported merchandise was a part of a metal pressure container designed and used for the transport and storage of compressed gases, item 640.10, which covers such containers, does not provide for parts. [Footnote reference omitted.] For that reason, classification of the imported shapes as a part under item 640.10 was precluded and the articles were held properly classified as angles, shapes and sections under item 609.80—which item, the court held, was relatively more specific for the hemispherical shapes, in the condition imported, than item 657.20, the general provision for articles of iron or steel, not specially provided for.

In a situation analogous to the facts here, where "shoe sections of steel" required cutting to size and other processing, the Bureau of Customs ruled in 1964 (T.D. 56377(48)):

Shoe sections of steel, not alloyed, unfinished, delivered from a steel mill in sections of 20 to 30 feet, in a sort of tee form with one arm of the tee extended, *which, after importation, will be cut to size drilled, and heat treated into replacement parts for crawler type tractors*, classifiable under the provision for Angles, shapes, and sections \* \* \* hot rolled \* \* \*; Not drilled, not punched, and not otherwise advanced:   Other than alloy \* \* \* steel, in *item 609.80* TSUS. [Emphasis added in part.]

The parties have cited two additional cases wherein the involved merchandise was held excluded from the provisions for angles, shapes, and sections, viz: *Trans-Atlantic Company* v. *United States*, 70 Cust.

Ct. 243, C.D. 4459 (1973) (iron shelf brackets); and *Burn Strauss, Inc.* v. *United States*, 62 Cust. Ct. 664, C.D. 3845, 305 F.Supp. 14 (1969) (wading pool walls). These cases, however, are readily distinguishable from the facts in the present case inasmuch as the shelf brackets in *Trans-Atlantic* and the wading pool walls in *Burn Strauss* were both finished, ready to use articles of commerce rather than materials requiring further processing. Thus, in *Trans-Atlantic* the court commented (70 Cust. Ct. at 248):

> Defendant contends that while the rolled tee, from which the shelf bracket is made, is a basic shape or form, the importation is a completely fabricated article upon which no further work is required to fit it for its specific use and therefore is an article of commerce and no longer a basic shape or form. *Stengel* v. *United States*, 2 Ct. Cust. Appls. 137, T.D. 31663 (1911).

> It is noted that the superior heading to item 609.84, *supra*, contains the language "whether or not drilled, punched, or otherwise advanced." This is a clear indication of an intent to include an advancement even to the point of dedication so long as the article remains material. *Commercial Shearing & Stamping Company* v. *United States (Guadalupe Industrial Supply Company, Inc., Party-in-Interest)*, 65 Cust. Ct. 91, C.D. 4060, 317 F. Supp. 750 (1970), *aff'd*, 59 CCPA 203, C.A.D. 1067 (1972).

> The imported merchandise is without dispute a finished article known in the trade as a shelf bracket. It has therefore passed the state of being material and is in fact a separate and distinct article of commerce. Such an article is not within the purview of item 609.84, *supra*.

Finally, in *Commercial Shearing*, cited *supra* in *Pistorino, Carr* and *Trans-Atlantic*, Judge Landis, writing for the Third Division, commented respecting "finished" articles dedicated to a particular use (65 Cust. Ct. at 104):

> We read TSUS to concede that the term "angles, shapes, and sections" may apply to articles finished in the sense that their shape and size dedicate them to a particular use or, minimally, dictate what they can be used for and, therefore, to classify them by the degree to which they have been advanced toward any use. Unless such a literal interpretation is placed upon the relevant classifying terms, the distinction between angles, shapes, and sections "not drilled, not punched, and not otherwise advanced", in TSUS item 609.80, and angles, shapes, and sections "drilled, punched, or otherwise advanced", in TSUS item 609.84, is meaningless. * * *

It is clear from the above mentioned cases that the provisions for angles, shapes, and sections include a more advanced product than strip, and that dedication to a particular use does not preclude classification of a material as angles, shapes, and sections. Since the shoe die knife steel is concededly a material and falls within the statu-

tory definition of angles, shapes, and sections in headnote 3(j), I perceive no basis in the cases cited for relegating the classification of the subject merchandise to the basket provision for articles of iron or steel in item 657.20.

3.

I now turn to defendant's contention that "in order to be considered an angle, shape, or section as said terms are known in the domestic steel industry, an article must possess a flange or stiffening member". Defendant's contention is predicated upon the testimony of its witness that "angles, shapes, and sections, in the steel trade terminology in common understanding, are rolled flanged sections for constructional purposes" (R.38).

I find that defendant's position is unsound for the following reasons.

First, neither the latch needle blanks in *Pistorino* nor the tank ends in *Commercial Shearing* possessed a flange or stiffening member, but nevertheless both articles were held classifiable as angles, shapes, and sections. In *Commercial Shearing,* a "flange" having no useful purpose was cut off the hemispherical shape and discarded as waste or scrap metal prior to shipment. Thus, when imported, the tank ends had no flange.

Second, the "flange" referred to by defendant's witness "projects at an angle from the remaining part of the member to give it stiffness and strength" (R.39). However, the "flange" which was present on the tank end after its removal from the press served no useful purpose, and as indicated above, it was cut off and discarded prior to shipment. Therefore, it is apparent that the *Commercial Shearing* article *never* possessed a "flange" in the structural sense, as that term was used by defendant's witness.

Clearly, then, *Pistorino* and *Commercial Shearing* refute defendant's contention that angles, shapes, and sections within the purview of the statute must possess a flange or stiffening member.

It is noted, too, in *Commercial Shearing* the plaintiff contended that angles, shapes, and sections within the purview of the statute were limited to products of a basic steel mill and excluded articles further advanced by processing in a so-called fabricating plant. In rejecting that construction Judge Landis observed (65 Cust. Ct. at 99):

> * * * TSUS having assigned its own meaning to the term "angles, shapes, and sections", the testimony of plaintiff's witnesses and the supporting argument, on the commercial meaning of the term in the integrated basic steel industry producing angles, shapes, and sections, is factually irrelevant. Evidence of the products that the integrated basic steel industry catalogue under that term * * * and the products that are sold under that TSUS term * * * is also irrelevant for the same reason.

Further, in *Commercial Shearing*, Judge Lane writing for the unanimous appellate court concluded with reference to construction of the statute (59 CCPA at 206):

> * * * We further conclude that the tariff meaning in this case is plainly manifest, simple and clear. It is not necessary in such a situation to resort to dictionaries, textbooks, scientific treatises, governmental publications, the Tariff Classification Study, or the provisions of the Brussels Nomenclature. *F.L. Smidth & Co.* v. *United States*, 56 CCPA 77, 409 F.2d 1369, C.A.D. 958 (1969). * * *

Accordingly, I am clear that in construing the term "angles, shapes, and sections", commercial meaning is not controlling in light of the statutory definition in headnote 3(j). Plainly, had Congress intended the narrow restrictive application urged by defendant, it would have expressly so provided. This is especially evident from the fact that the TSUS provisions for angles, shapes, and sections were derived from *both* paragraph 304, Tariff Act of 1930, covering "pressed, sheared, or stamped shapes, not advanced in value or condition by any process or operation subsequent to the process of stamping", and paragraph 312, Tariff Act of 1930, providing for *"structural* shapes".[8] Hence, Congress did not intend to limit the shapes covered by items 609.84 and 609.88 only to *structural* shapes or shapes possessing a *flange or stiffening member*,[9] as urged by defendant.

In conclusion, I agree with plaintiff's position that the shoe die knife steel is properly classifiable under the provisions for angles, shapes, and sections. Defendant has not disputed in its brief that the merchandise was "cold formed" or "otherwise advanced" within the purview of the statute. Since items 609.84 and 609.88 (depending upon the weight per linear foot as shown in the official papers) more specifically provide for the merchandise than item 657.20, the Government's assessment of duty under the latter provision was erroneous.

The protests are sustained, and judgment will issue accordingly.

---

[8] *Tariff Classification Study Explanatory and Background Materials* (November 15, 1960), schedule 6, page 94.

[9] Note that items 652.93 through 652.96, which were derived from paragraph 312 of the Tariff Act of 1930 cover "Columns, pillars, posts, beams, girders, and similar *structural* units". (Emphasis added.)