**JOHN V. CARR & SON, INC.**

v.

**UNITED STATES.**

C.D. 4411; Protest No. 70/5757–9359 against the decision of the district director of customs at the port of Detroit.

United States Customs Court.
March 1, 1973.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz and Irving Levine, New York City, of counsel), for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen. (Martin L. Rothstein and Andrew P.

Vance, New York City, trial attys.), for defendant.

RICHARDSON, Judge.

The merchandise the subject of this action, described on the invoice as "Control Board" and "Protective Circuit Board", respectively, was imported at Detroit, Mich., from Canada, and classified in liquidation under TSUS item 685.90 as modified in T.D. 68–9 at the duty rate of 14 *per centum ad valorem.* The complaint alleges that the boards should be classified under TSUS item 692.40 as parts of forklift trucks at the modified duty rate of 7.5 *per centum ad valorem,* and seeks a judgment of this court to that effect.

The competing tariff provisions read:

[classified under]

685.90   Electrical switches, relays, fuses, lightning arresters, plugs, receptacles, lamp sockets, terminals, terminal strips, junction boxes and other electrical apparatus for making or breaking electrical circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; switchboards (except telephone switchboards) and control panels; all the foregoing and parts thereof .............................. 14% ad val.

[claimed under]

692.40   Fork-lift trucks, platform trucks and other self-propelled work trucks, and platform tractors; all of the foregoing of off-the-highway types used in factories, warehouses, or transportation terminals for short-distance transport, towing, or handling of articles; and parts of the foregoing trucks and tractors .. 7.5% ad val.

———◆———

The issues thus framed are whether the imported boards are one or more of the articles enumerated in item 685.90 as classified, and whether they are parts of forklift trucks as claimed in the complaint.

The record before the court shows that the boards are installed in the traction drive motor control system of electric forklift trucks manufactured in this country by Allis-Chalmers Manufacturing Company. Forklift trucks are off the road vehicles which move materials in warehouses, lumber yards and other places over short distances. Allis-Chalmers' electric forklift trucks employ what is known as the "pulse width modulation system" to control the maneuverability of the vehicle. This method is a variable speed control that provides stepless acceleration through control of the drive motor power. Control is achieved by supplying the motor with distinct pulses of power from the battery, spaced at equal intervals of time in rapid succession, actuating the power switch, and thereby, causing the drive motor to turn on and off at a fast rate. The control board, one of the articles in issue, constitutes the heart of the pulse width modulation system. This transistorized printed wiring board assembly develops the desired repetitive pulses of power in response to the lift truck operator's foot control pedal.

The other article in issue, the protective circuit board which is also a transistorized printed wiring board assembly,

monitors the functions of the control board, inducing contactors to open the power circuits if it detects any of a number of malfunctions in the control board. Its purpose is to prevent the power portion of the circuits from functioning in such a way as to cause excessive damage to other electrical components. And it is said that the application made of the imported electronic devices at bar by Allis-Chalmers provides a more efficient use of the power source utilized in their trucks.

Tom N. Thiele, a graduate electrical engineer and director of electronics and control technology for Allis-Chalmers' Advance Technology Center testified that the imported boards are designed and used solely for the control of the traction motor drive in Allis-Chalmers' electric forklift trucks, and that they are necessary for the proper functioning of these trucks. As to the relationship between the involved boards and the power circuits of the lift trucks in which the boards are installed, the witness Thiele testified on direct examination (R. 111–112):

Q. I am not sure, but are these boards, in your opinion, used in power circuits?—A. Referring to Exhibits 1 and 2?

Q. Exhibits 1 and 2.—A. No, sir. I don't believe they are used in power circuits.

Q. Will you tell us why?—A. As I described earlier, in a system for the control of lift trucks there is one power circuit which consists of the drive motor, power contactors, power switch, battery and in the interconnecting wiring. These control circuit boards are not used in that power circuit.

Q. Now, you stated what is in the power circuit. Is there any other circuit in the system or in the truck?— A. Yes.

Q. What is that other system or what are the other systems? What are they called?—A. Control circuits.

Q. What are the differences between the power system and the control system?—A. The control system provides the necessary input voltage or current as it—as the case may be, which directs the operation of elements in the power circuit.

Thiele's testimony corroborates that previously given on the subject by a graduate mechanical engineer involved with the manufacture of Allis-Chalmers' electric forklift trucks, who, like the witness Thiele, was called as a witness on plaintiff's behalf.

Defendant, conceding that the imported boards are not used directly in a power circuit in the Allis-Chalmers' forklift trucks and that they are used in conjunction with an electrical circuit whose function it is to control the operation of the power circuit (brief, p. 23), introduced documentary and testimonial evidence of the common meaning of the terms employed in item 685.90 with a view toward meeting other testimony given by plaintiff's witnesses to the effect that the subject articles do not identify with any of the articles and descriptions enumerated and set forth in item 685.90.

Plaintiff contends that the imported boards are not within the ambit of item 685.90 because they are not used in power circuits and do not fall within the common meaning of any of the articles and descriptions enumerated and set forth in item 685.90, and further, that these boards are parts of forklift trucks provided for in item 692.40. Defendant contends to the contrary, and further, that plaintiff has failed to prove that the imported boards are of a class or kind of merchandise which is chiefly used as parts of forklift trucks.

■■ It is clear to the court from the outset that if the imported boards are excluded from item 685.90 classification because they are not used in power circuits, then it is irrelevant as to whether the boards respond to the common meaning of any of the articles and descriptions in that tariff provision. As our appeals court said in United States v. General Electric Co., 441 F.2d 1186, at

page 1189, 58 CCPA 152, at page 156, C.A.D. 1021 (1971):

. . . [A] seemingly broad descriptive tariff term is not to be taken as encompassing every article which may literally come within that term but rather only those articles of the type intended by Congress in enacting the TSUS. United States v. Andrew Fisher Cycle Co., 426 F.2d 1308, 57 CCPA 102, C.A.D. 986 (1970).

. . .

Hence, the primary question to be considered is whether the imported boards are excluded from item 685.90 classification because they are not involved in power circuits.

■ In support of its contention plaintiff relies upon United States v. General Electric Co., *supra*. In that case certain radio jacks, among other articles, were classified by the district director under TSUS item 685.90, and the importer contended that the jacks should be classified under TSUS item 685.22 as other parts of radio reception apparatus. In sustaining the lower court's judgment which upheld the importer's claim for the jacks, our appeals court construed the provisions of item 685.90 as being limited to articles used in power circuits. The court said (441 F.2d p. 1189, 58 CCPA p. 156):

. . . [W]e think the Customs Court was correct in its holding that the imported jacks, used in low current audio circuits, are not specifically provided for in item 685.90 since *the items enumerated therein all relate to electrical power circuits*.

\*　\*　\*　\*　\*　\*

. . . The jacks in the present case are not, in our opinion, the type of article Congress intended to encompass by item 685.90. [Emphasis added.]

And inasmuch as the involved boards are admittedly not used in power circuits, plaintiff argues, perforce of the holding in C.A.D. 1021, that the boards

in issue here are excluded from classification under item 685.90.

Defendant, on the other hand, takes the position that the holding in C.A.D. 1021 is inapplicable to the instant facts because the merchandise in C.A.D. 1021 was used in *low current audio circuits* of less than ½ ampere, whereas the merchandise at bar is used in control circuits designed to carry electrical power of up to ten amperes.

In the court's opinion, the decision of our appeals court in C.A.D. 1021 is controlling on the instant facts.[1] The emphasis in C.A.D. 1021 is not on the degree of current capacity or amperage rating of imported articles involved in circuits other than power circuits, as defendant asserts, in determining whether such articles are excluded from item 685.90 classification. The emphasis in C.A.D. 1021 in making such determination is on whether or not the imported article is used in power circuits, our appeals court having clearly determined in that case that it was the intent of Congress to restrict classification under item 685.90 to imported articles relating to electrical power circuits.

The court consequently agrees with plaintiff's contention that the subject articles are excluded from item 685.90 classification because they are unrelated to electrical power circuits, following the rationale of the decision in C.A.D. 1021. And in view of this finding, it becomes unnecessary for the court to consider, for the purposes of this case, the common meaning of the terms employed in item 685.90 to describe articles covered thereby.

The sole remaining question in the case, therefore, is whether plaintiff has established the classification contended for. The proofs furnished by plaintiff clearly establish that the subject boards are actually used in the manufacture of electric forklift trucks by Allis-Chalmers Manufacturing Company, that this is the

---

1. Other cases cited by defendant in the brief on pages 24 and 25 do not lead to a contrary conclusion inasmuch as an examination of those cases reveals them to be inapposite on the law and the facts.

purpose for which they were produced abroad, and that without these boards electric forklift trucks of Allis-Chalmers' production would not function properly.

But defendant contends that this is not enough. According to defendant, plaintiff must prove that the boards in issue are of a class or kind which are chiefly used in forklift vehicles in accordance with the requirements of General Interpretative Rule 10(e)(i), and that because plaintiff has failed to furnish such proof its cause of action fails. General rule 10(e)(i) reads:

(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i. e., the use which exceeds all other uses (if any) combined;

 The difficulty which the court finds with defendant's argument here is that the provision for parts of forklift trucks in item 692.40 is not a tariff classification which is controlled by the chief use principle of general rule 10(e)(i) noted above. General Interpretative Rule 10(ij) states, among other things, that a provision for "parts" of an article covers a product solely or chiefly used as a part of *such* article. Thus, "actual use" of the imported merchandise governs a "parts" tariff classification provision, subject, of course, to the relative specificity principle written into general rule 10(ij). And "actual use" is excepted from the chief use principle set forth in general rule 10(e)(i) relied upon by the defendant. In this connection, it is to be noted that our appeals court in C.A.D. 1021 sustained the "parts" classification contended for by the importer on the basis of the record evidence of the "actual use" of the im-

ported parts without regard to any consideration of the chief use principle set forth in general rule 10(e)(i).

Hence, in line with the requirements of general rule 10(ij), plaintiff need only prove here the *actual use* of the imported boards as a predicate for classification under item 692.40. And the court is satisfied from the instant record that plaintiff has established the imported boards to be parts of forklift trucks within the meaning of item 692.40 consistent with the requirements of general rule 10(ij).

For the reasons stated, the court finds that plaintiff's claim for classification of the imported control boards and protective circuit boards under TSUS item 692.40 as parts of forklift trucks is sustained by the evidence. And judgment will be entered herein accordingly.