The **UNITED STATES,**
**Appellant,**

v.

**JOHN V. CARR & SON, INC.,**
**Appellee.**

**Customs Appeal No. 5536.**

United States Court of Customs and Patent Appeals.

April 25, 1974.

Irving Jaffe, Acting Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Robert B. Silverman, New York City, for the United States.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellee. Joseph Schwartz and Irving Levine, of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

This appeal is from the decision and judgment of the United States Customs Court, 70 Cust.Ct. 80, C.D. 4411, 358 F. Supp. 280 (1973) sustaining appellee's claim that the subject merchandise was improperly classified. We reverse.

## THE IMPORTATIONS

The merchandise consists of two kinds of transistorized printed wiring board assemblies, one invoiced as a "control board" and the other as a "protective circuit board." Both assemblies are used as parts of a pulse modulation system for operating fork lift trucks. In such a system, the motor is supplied with energy in distinct pulses spaced at equal intervals of time through a solid state switch device in the battery circuit. The control board provides electrical pulses to control the opening and closing of the device. The pulses are varied in width by the operator to provide stepless control of the motor speed. According to appellee's witness Evans, the protective circuit board monitors the control board and "induces a large contactor to open the power circuits" in case of malfunction of the control board.

## THE CLASSIFICATIONS AND STATUTES

The importations were classified under TSUS item 685.90 reading:

Electrical switches, relays, fuses, lightning arresters, plugs, receptacles, lamp sockets, terminals, terminal strips, junction boxes and other electrical apparatus for making or breaking electrical circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; switchboards (except telephone switchboards) and control panels; all the foregoing and parts thereof ............ 17.5% ad val.

The claimed classification as approved by the Customs Court was TSUS item 692.40, which reads in pertinent part:

Fork-lift trucks, platform trucks and other self-propelled work trucks, * * *; and parts of the foregoing trucks and tractors.

Other tariff provisions involved are:

*General Headnotes and Rules of Interpretation:*

10. *General Interpretative Rules.* For the purposes of these schedules—

\* \* \* \* \* \*

(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i. e., the use which exceeds all other uses (if any) combined;

(ii) a tariff classification controlled by the actual use to which an imported article is put in the United States is satisfied only if such use is intended at the time of importation, the article is so used, and proof thereof is furnished within 3 years after the date the article is entered;

\*   \*   \*   \*   \*   \*

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

## THE DECISION OF THE CUSTOMS COURT

The Customs Court held that the importations were excluded from TSUS item 685.90 "because they are unrelated to electrical power circuits," relying on United States v. General Electric Co., 441 F.2d 1186, 58 CCPA 152, C.A.D. 1021 (1971). Accordingly, it was deemed unnecessary to consider "the common meaning of the terms employed in item 685.90 to describe the articles covered thereby." As to item 692.40, the court held that the provision for parts of fork-lift trucks in that item "is not a tariff classification which is controlled by the chief use principle of general rule 10(e)(i)." It then stated:

\*   \*   \* General Interpretative Rule 10(ij) states, among other things, that a provision for "parts" of an article covers a product solely or chiefly used as a part of *such* article. Thus, "actual use" of the imported merchandise governs a "parts" tariff classification provision, subject, of course, to the relative specificity principle written into general rule 10(ij). And "actual use" is excepted from the chief use principle set forth in general rule 10(e)(i) relied upon by the defendant. In this connection, it is to be noted that our appeals court in C.A.D. 1021 sustained the "parts" classification contended for by the importer on the basis of the record evidence of the "actual use" of the imported parts without regard to any consideration of the chief use principle set forth in general rule 10(e)(i).

Hence, in line with the requirements of general rule 10(ij), plaintiff need only prove here the *actual use* of the imported boards as a predicate for classification under item 692.40. And the court is satisfied from the instant record that plaintiff has established the imported boards to be parts of fork-lift trucks within the meaning of item 692.40 consistent with the requirements of general rule 10(ij).

Having found that appellee's evidence established that the importations were actually used in the manufacture of fork-lift trucks by the importer, Allis-Chalmers Manufacturing Company, the court found the claim for classification of the imported control and protective circuit boards under item 692.40 as parts of fork-lift trucks to be sustained by the record, which included testimony of two witnesses for appellee and one for appellant along with certain exhibits.

## OPINION

With great deference to the fact that the learned trial court heard the witnesses and observed the initial presentation of the exhibits, we think the court erred in its application of *General Electric* to the present facts. There the goods were jacks for insertion into radio circuits to convey audio signals to earphones. We stated:

We cannot agree with appellant's argument that rule 10(ij) requires that the provision of item 685.90 for "other electrical apparatus for making or breaking electrical circuits" must prevail over the provision for parts of radio reception apparatus in item 685.-22. This is because we think the Customs Court was correct in its holding that the imported jacks, used in low current audio circuits, are not specifically provided for in item 685.90 since the items enumerated therein all relate to electrical power circuits.

We then expressed the opinion that the jacks there were "not \* \* \* the type of article [that] Congress intended to encompass by item 685.90" and concluded that " 'other electrical apparatus for making or breaking electrical circuits' in item 685.90, TSUS, is not a specific provision [rule 10(ij)] for the imported jacks."

In *General Electric* and in Midland International Corporation v. United States,

62 Cust.Ct. 164, C.D. 3715, 295 F.Supp. 1101 (1969), cited therein, it was held that the items in 685.90 relate to power circuits, as contrasted to audio circuits. There is no contention and no evidence indicating that the circuits here involved are low current audio circuits. The testimony of appellee's own witnesses is that 500 to 800 amperes may pass through the "major power circuit." The control board itself carries five to ten amperes. The present importations participate directly in the operation of the switch elements that control energization of the motor. Thus they *do* relate to the main power circuit and *General Electric* does not constitute authority for excluding the present importations from item 685.90.[1]

█ The Customs Court thus should have considered the common meaning of the terms employed in item 685.90 in light of the evidence of record, before holding the classification of the District Director erroneous. On examination of the evidence, we are convinced that the importations are within the common meaning of at least certain of the articles in 685.90, including particularly "other electrical apparatus for making or breaking electrical circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; * * * control panels; * * * and parts thereof." We therefore hold that appellee has failed to carry the first portion of its burden, i. e. to overcome the presumption that the District Director's classification was correct.[2] See New York Merchandise

Inc. v. United States, 459 F.2d 1047, 59 CCPA 127, C.A.D. 1052 (1972); 28 U. S.C. § 2635(a).

█ The Customs Court further erred in holding that the actual use of the importations in issue governs their tariff classification. That holding is not supported by rule 10(ij), supra, which limits the provision for "parts" of an article to a product "solely or chiefly used" as a part of such article.[3] The court apparently considered the reference to "actual use" in the parenthetical expression in general rule 10(e)(i) as creating an exception to rule 10(ij). But that parenthetical expression means that "actual use" is to be considered only when the tariff classification under review is *controlled* by actual use. Nothing in the law argued by the parties or in the evidence of record demonstrates that either item 685.90 or item 692.40 is so controlled. Hence, rule 10(ij) was fully applicable herein and appellee, to sustain its claimed classification as "parts of fork lift trucks," was required to prove sole or chief use as such. The evidence of record does not convince us that the present importations are solely or chiefly used as parts of fork lift trucks.

The Customs Court's reference to our decision in *General Electric* as sustaining a "parts" classification is mistaken. The subject of "sole" or "chief" vs. "actual" use is not discussed in that opinion. The decision of the Customs Court, which we sustained in *General Electric*, specifically held that the importer had

---

1. An effort, based on *General Electric*, to incorporate a requirement for use with electric power in TSUS item 685.15, "insulated electrical conductors, other," was not accepted by the court in United States v. Ampex Corp., 59 CCPA 134, 460 F.2d 1086, C.A.D. 1054 (1972).

2. Appellee argues in his brief that mention of "Electrical apparatus for the protection of electrical circuits; control panels; and parts thereof" in the District Director's reference to item 685.90, in affirming the classification in response to the protest, limits the presumption of correctness to the speci-

fied articles. We think appellee's argument is wrong. It is apparent from the record that all the items in 685.90 were considered in issue throughout the proceedings below. Moreover, limitation of the presumption is not entitled to our consideration because it was raised here for the first time. See United States v. Superwood Corporation, 52 CCPA 57, C.A.D. 858 (1965).

3. There is evidence that articles similar to the control board were sold to a submarine builder and to the Post Office a few years prior to the time of the present importations.

established chief use, as required by rule 10(ij). (63 Cust.Ct. 140 at 145)

Appellee has thus failed to meet the second portion of its burden, i. e. to establish that the claimed classification is correct. See New York Merchandise Inc. v. United States, supra. The judgment of the 'Customs Court must be reversed.

Reversed.