ALL CHANNEL PRODUCTS CORP., PLAINTIFF *v.*
UNITED STATES, DEFENDANT

Consolidated Court No. 77-5-00798

(Decided January 16, 1981)

*Shaw and Stedina* (*Charles P. Deem* of counsel) for the plaintiff.
*Alice Daniel*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Robert H. White* of counsel) for the defendant.

WATSON, Judge: In this consolidated action, the imported articles consist of switches of assorted types to which various lengths of wire are attached. They are chiefly used in the manufacture of indoor television antennas.

Most of the merchandise was classified under item 685.90 of the TSUS, as switches.[1] For five entries that were classified otherwise,[2] the Government conceded error and stated a claim for classification as switches.

Plaintiff claims classification under item 685.20[3] as parts of television apparatus in accordance with the chief use, as parts of television antennas.

The dispute centers on the function of the additional wires. The rotary switch portions have already been held to be switches within the meaning of item 685.90.[4]

---

[1] 685.90 Electrical switches, relays, fuses, lightning arresters, plugs, receptacles, lamp sockets, terminals, terminal strips, junction boxes and other electrical apparatus for making or breaking electrical circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; switchboards (except telephone switchboards) and control panels; all the foregoing and parts thereof * * * 8.5% ad val.

[2] The articles covered by entry Nos. 236598, 254449, 240232, 244903 and 307440 were classified as insulated electrical conductors under item 688.15 which reads as follows:

688.15 Insulated (including enamelled or anodized) electrical conductors, whether or not fitted with connectors (including ignition wiring sets, Christmas tree lighting sets with or without their bulbs, and other wiring sets):

|  *  |  *  |  *  |  *  |  *  |  *  |  *  |

With fittings:

|  *  |  *  |  *  |  *  |  *  |  *  |  *  |

Other_____ 8.5% ad val.

[3] Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and television transmission and reception apparatus and television cameras; record players, phonographs, tape recorders, dictation recording and transcribing machines, record changers, and tone arms; all of the foregoing, and any combination thereof whether or not incorporating clocks or other timing apparatus, and parts thereof:

|  *  |  *  |  *  |  *  |  *  |  *  |  *  |

685.20 Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and television transmission and reception apparatus, and parts thereof:

Television apparatus and parts thereof_____ 5% ad val.

[4] *Rembrandt Electronics, Inc.* v. *United States*, 64 CCPA 1, C.A.D. 1175, 542 F. 2d 1154 (1976). Portions of the trial record in that case were incorporated herein. Although the defendant suggests that some of the switches involved in that case were exactly the same as these, the decisions and record do not permit more than surmise on that point.

In the finished antenna, the wires connect the switch to the characteristic metal dipoles or loops which are the principal signal reception parts of the antenna. If that was the only purpose of the wires, the court might consider them inconsequential in the determination of the classification of this article. The wires would be minor, subsidiary portions and the switch itself would clearly be the only object of significance, or if "switch" was perhaps too restrictive a term to describe the entire importation, it could nevertheless be described as "other electrical apparatus for making or breaking electrical circuits," and it would still be classifiable within item 685.90.[5]

However, the testimony of plaintiff's witnesses established that the wires have the function of providing a variety of inductances for tuning; that is to say, according to the various combination in which they are selected by the switch, the sensitivity of the antenna to the signal is modified to a significant degree. The wires, therefore, notwithstanding their unprepossessing appearance, have a definite function which has nothing to do with the making or breaking of circuits, but is an outgrowth of their intrinsic resistance to the passage of electricity.

As an example, in exhibit 22, plaintiff's witness, Von Recklinghausen, analyzed the imported model No. 100 and diagramed 12 possible variations in inductance based on the attached wires. The same analysis was made for the other models, and the only differences are that in those with a two-position switch, the variations are limited to two. In function, the wires play the same role in all the importations.

From the standpoint of functional analysis, the importation consists of a portion that is a switch and a portion that provides variable inductance. The court believes that an object with this additional function is not accurately described as a switch or as any other electrical apparatus for making or breaking electrical circuits. To engage in an attempt to evaluate the relative importance of these two functions would be futile. What *is* important, is that the object possesses a distinct and significant part whose function is inconsistent with classification merely as a switch. As the Court of Customs and Patent Appeals has noted,[6] these are primarily matters of statutory interpretation. While no one doubts that the provision for switches will cover all forms and varieties,[7] there comes a point where the addition of parts and functions transforms the object into something else.

[5] See, *United States* v. *John V. Carr & Son, Inc.*, 61 CCPA 41, 45, C.A.D. 1116, 495 F. 2d 771 (1974).

[6] *Englishtown Corporation* v. *United States*, 64 CCPA 84, C.A.D. 1187, 553 F. 2d 1250 (1977).

[7] *Nootka Packing Co.* v. *United States*, 22 CCPA 464, T.D. 47464 (1935).

In this case the court finds that the importations are intermediate "hybrid" objects which are best treated in accordance with their use and most accurately described as parts of television apparatus. In their condition as imported, they are not articles within the common meaning of "switches", and the testimony established that they are not normally sold or considered as such in the trade.[8]

The case of *Craig Corporation* v. *United States*, 75 Cust. Ct. 161, C.D. 4822 (1975) offers an instructive contrast to this case. In *Craig*, supra, the court held that foot switches for tape recorders were properly classifiable as switches even though they had, in addition to the actual switch, such parts as a housing, a pedal, springs, an electrical cord, and a strain device for the cord. The court reasoned that the paraphernalia were all solely related to the switch function. Here, the wires have an inductance function, which is a distinct and significant additional characteristic, and does not serve the switch function of making and breaking circuits.

For the reasons expressed above, the proper classification of these articles is as parts of television apparatus under item 685.20, dutiable at the rate of 5 percent ad valorem.

Judgment will enter accordingly.

---

[8] The invoicing of these importations is considered to be without significance by the court.