Let Judgment be entered for plaintiff in the amount of $10,219.00, plus costs of $20.94, for a total of $10,239.94.

**PISTORINO & COMPANY, INC.**

v.

**UNITED STATES.**

C.D. 4373; Protests 65/2528-18654, etc., against the decision of the collector of customs at the port of Boston.

United States Customs Court, Second Division.
Aug. 29, 1972.

Walter E. Doherty, Jr., Boston, Mass., for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen. (Mollie Strum, New York City, trial atty.), for defendant.

Before RAO, FORD and NEWMAN, Judges.

FORD, Judge:

The cases listed in schedule "A," annexed hereto and made a part hereof, were consolidated for the purpose of trial and represent a retrial of an issue decided under the provisions of the Tariff Act of 1930. The record was incorporated herein. Pistorino & Company, Inc. v. United States, 53 Cust.Ct. 174, C.D. 2491 (1964), on rehearing Same v. Same, 61 Cust.Ct. 100, C.D. 3538, 287 F.Supp. 978 (1968). The merchandise in the case at bar was classified under the provisions of item 670.58 of the Tariff Schedules of the United States which provides for latch needles and prescribes duty at the rate of $1.00 per thousand plus 30 per centum ad valorem. Since the latch is added to the imported items after importation, the classification is actually as an unfinished latch needle based upon General Interpretative Rule 10(h) of said tariff schedules which provides for coverage of an article finished or not finished unless the context requires otherwise.

Plaintiff claims alternatively under item 609.13 of said schedules at the rate of 9.5 per centum ad valorem as strip, cut, pressed, or stamped to nonrectangular shape, valued at over 8 cents per pound, or under item 609.88, Tariff Schedules of the United States, at 8.5 per centum ad valorem as angles, shapes and sections, cold formed, weighing not over 0.29 pound per linear foot, other than alloy iron or steel, or as other articles of iron or steel under the provisions of item 657.20 at the rate of 19 per centum ad valorem.

The pertinent statutory provisions of schedule 6 involved herein read as follows:

*Part 4 headnotes:*

1. This part does not cover—

   \* \* \* \* \* \*

   (vi) articles and parts of articles specifically provided for elsewhere in the schedules.

   Subpart E.—Textile Machines; \* \* \*

   \* \* \* \* \* \*

   Parts of textile machinery:

   \* \* \* \* \* \*

   Needles for knitting machines:

670.58  Latch needles .......... $1 per 1,000 + 30% ad val.

Schedule 6, part 2, subpart B:

Plates, sheets, and strip, all the foregoing, of iron or steel, cut, pressed, or stamped to nonrectangular shape (except as provided in item 609.17):

   Other than alloy iron or steel:

   \* \* \* \* \* \*

609.13     Valued over 8 cents per pound .. 9.5% ad val.

     *    *    *    *    *    *

     Angles, shapes, and sections, all the fore-going, of iron or steel, hot rolled, forged, extruded, or drawn, or cold formed or cold finished, whether or not drilled, punched, or otherwise advanced; sheet piling of iron or steel:

       Angles, shapes, and sections:

       *    *    *    *    *    *

         Cold formed and weighing not over 0.29 pound per linear foot:

609.88          Other than alloy iron or steel ............ 8.5% ad val.

    Schedule 6, part 3:

    *Subpart G headnotes:*

     1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

     *    *    *    *

    Articles of iron or steel, not coated or plated with precious metal:

       *    *    *    *    *    *

    Other articles:

       *    *    *    *    *    *

657.20     Other .................. 19% ad val.

The record in the incorporated case was accurately digested in the previous opinions by Judges Lawrence and Rao which we adopt.

At the opening of the trial of this case the following facts were stipulated by the parties:

1. That the merchandise in these consolidated protests is the same in all material respects as the merchandise in the incorporated protest.

2. That the merchandise in these consolidated protests is valued over 8 cents per pound.

3. That the merchandise in these consolidated protests is not coated or plated with any metal either base or precious.

Subsequent to the trial of the case a stipulation was entered into by the parties hereto and approved by the court on October 15, 1970, which stipulation is on file with the papers in this case. In accordance with this, the following facts were agreed to:

1. The merchandise, the subject of said protests, is not composed of an alloy iron or steel within the meaning of Headnote (h) [sic],[1] Subpart B, Part 2, Schedule 6, TSUS, but is composed of a high carbon steel.

2. Said merchandise is cold formed and weighs not over 0.29 pound per linear foot.

At the present trial, plaintiff introduced the testimony of two witnesses and introduced exhibits 1 through 6 consisting of eight exhibits.

Mr. Bacon, the first witness called on behalf of plaintiff, had testified in the incorporated case and he verified his testimony therein. His present testimony reviewed his familiarity with the imported merchandise and his knowledge of its manufacture both here and abroad. He introduced as plaintiff's exhibit 1 a copy of exhibit 7 in the incorporated case which was not available at the time of this trial. The specification required by the importer of the metal used abroad in the manufacture of the imported merchandise was received as plaintiff's exhibit 2. Mr. Bacon testified that plaintiff's exhibit 3 consists of representative samples of the imported merchandise although not every item is included. The front page of a brochure depicting the type of machine and metal strip used in the manufacture of merchandise such as is involved herein was received in evidence as plaintiff's exhibit 4. A steel strip which had a portion of it stamped out at plaintiff's plant in New Hampshire to form merchandise such as is involved was received in evidence as plaintiff's exhibit 5A while the item stamped out was received as plaintiff's exhibit 5B and the waste resulting therefrom was received as plaintiff's exhibit 5C.

The next witness called on behalf of plaintiff was a metallurgist, Mr. Spitzner, who based upon a chemical analysis received as plaintiff's exhibit 6 and the schedule 6, part 2, subpart B, headnote

---

[1]. Through inadvertence it appears that the stipulation in this regard should have referred to headnote *2(h)* instead of (h), which is apparent from the fact that

2(h) provides for the meaning of the term "alloy" steel when used in this schedule.

(h)(ii), concluded the metal was not an alloy.

The decision in the incorporated case involved the statutory provisions of the Tariff Act of 1930. The identical merchandise as involved herein was classified under the provisions of paragraph 343 which provides for latch needles. The claim of plaintiff under paragraph 304 of said act differs from the claims in the case at bar. Both decisions held the classification as latch needles to be erroneous. In the first decision, C.D. 2491, based upon the record as made, the court found multiple uses of the articles and concluded classification under the provisions of paragraph 343 was not applicable. Accordingly, the court held the merchandise to be subject to classification under the basket provision, paragraph 397, of the metal schedule.

█ Upon rehearing and with the introduction of further evidence, the court found the imported articles to be dedicated to use in the manufacture of latch needles but nevertheless were held not to be unfinished latch needles. The court reasoned that the provision for latch needles did not include unadvanced stampings, even though dedicated to use in the manufacture of latch needles. The rule that dedicated unfinished articles are classified in the finished article provision does not apply to unadvanced basic forms which are otherwise expressly provided for.

In the Tariff Schedules of the United States, the provision under which classification was made is identical to paragraph 343 Tariff Act of 1930, to wit, latch needles. However, the claimed provisions, i. e., 609.13 and 609.88 contain new language as well as headnote language which presents the necessity for a trial under the Tariff Schedules of the United States provisions.

The record and plaintiff's exhibit 5A clearly indicate the stampings are made from strip of non-alloyed high carbon steel and that the merchandise is cold formed and weighs not over 0.29 pound per linear foot. The claim under item 609.13, *supra*, for strip, cut, pressed or stamped to nonrectangular shape is governed by headnote 3(h) of schedule 6, part 2, subpart B. This headnote insofar as it concerns strip and headnote 3 (j) which covers angles, shapes and sections provide as follows:

3. *Forms and Condition of Iron or Steel.*—For the purposes of this subpart, the following terms have the meanings hereby assigned to them:

\* \* \* \* \* \*

(h) *Strip:* A flat rolled product, whether or not corrugated or crimped, in coils or cut to length, under 0.1875 inch in thickness, and, if cold rolled, over 0.50 inch but not over 12 inches in width, or, if not cold rolled, not over 12 inches in width.

\* \* \* \* \* \*

(j) *Angles, shapes, and sections:* Products which do not conform completely to the respective specifications set forth herein for blooms, billets, slabs, sheet bars, bars, wire rods, plates, sheets, strip, wire, rails, joint bars, or tie plates, and do not include any tubular products.

The definition in the headnote covering strip requires the following:

1. a flat rolled product,
2. whether or not corrugated or crimped,
3. in coils or cut to length,
4. under 0.1875 inch in thickness,
5. if cold rolled over 0.50 inch but not over 12 inches in width, or
6. if not cold rolled, not over 12 inches in width.

█ We are of the opinion that to be dutiable as strip, the imported articles must meet the requirements of headnote 3(h). This would be true for strip *per se* as provided for in items 609.02 through 609.08, Tariff Schedules of the United States, as well as strip, cut, pressed or stamped to nonrectangular shape as provided for in items 609.12 through 609.15, *supra*. The record clearly indicates that the imported latch needle blanks are made from strip in

coils. However, the imported blanks are not in coils or cut to length. The measurements of thickness could readily be ascertained if necessary. The width of said blanks is not over 12 inches but we are not advised as to whether the strip from which the blanks are made is cold rolled or not. If cold rolled, over 0.50 inch in width. Irrespective of the lack of proof of the latter measurement, it is apparent that the merchandise involved does not meet the requirements for strip but is in truth and in fact products made from strip.

■■■ Accordingly, the next consideration to be given is whether item 609.88, providing for angles, shapes and sections, covers the involved articles. Headnote 3(j), covering these products, provides for products which do not meet the specifications for, among other items, strip. Since the imported merchandise, which is a product made from strip, is not imported in coils or cut to length, it does not conform to headnote 3(h) and may be subject to classification under item 609.88, *supra*. This item covers angles, shapes and sections which are cold formed and weighing not over 0.29 pound per linear foot. The latter requirements were established by stipulation. According to the Tariff Classification Study, Schedule 6, page 89, subpart B sets forth an orderly systematic arrangement which would apply to iron and steel, their alloys, and their basic shapes and forms in addition to iron and steel waste and scrap. It therefore logically follows that the provision for angles, shapes and sections includes a more advanced product than item 609.13, *supra*, but is still a material. Burn Strauss, Inc. v. United States, 62 Cust.Ct. 664, C.D. 3845, 305 F.Supp. 14 (1969). It is to be noted that the superior heading to item 609.88 includes the language "whether or not drilled, punched, or otherwise advanced." This is a clear indication that an advancement even to the point of dedication was intended to be included therein so long as the article

still remains material. Commercial Shearing & Stamping Company v. United States (Guadalupe Industrial Supply Company, Inc., Party in Interest), 65 Cust.Ct. 91, C.D. 4060, 317 F.Supp. 750 (1970), appeal pending.

We have no difficulty in finding that the imported blanks are shapes which do not conform to the specifications set forth in headnote 3, schedule 6, part 2, subpart B. We further find that said blanks are dedicated to use as latch needle blanks but are not unfinished latch needles. The record clearly establishes that nothing is done to the blanks after stamping and before shipping. They are accordingly unadvanced shapes. The record and exhibit 1 establish the numerous additional steps necessary to bring the blank to the point of being a latch needle.

■■■ Defendant contends that in order to be classifiable under item 609.88, *supra*, the articles must have a uniform cross section throughout their length as indicated in the Seventh Supplemental Report to the Tariff Classification Study. It is to be noted that neither headnote 3(j) nor the items themselves contain such a requirement. Therefore, the Tariff Commission's report, even if considered part of the legislative history [2] cannot add a requirement not included in the statute itself. American Customs Brokg. Co., Inc., a/c Hamakua Mill Co. v. United States, 433 F.2d 1340, 58 CCPA 45, C.A.D. 1002 (1970); Great Western Sugar Co. et al. v. United States, 452 F.2d 1394, 59 CCPA ——, C.A.D. 1038 (1972). Some of the definitions in headnote 3, i. e., 3(b), 3(c), 3(d), 3(e), 3(f), 3(i), and 3(k) refer to cross-section requirements. An omission to make any reference to cross-section in headnote 3(j), covering angles, shapes and sections, cannot be considered an oversight.

■■■ We are therefore of the opinion that the classification under item 670.58, *supra*, as unfinished latch needles is erroneous and the claimed classification

2. Rifkin Textiles Corp. v. United States, 54 CCPA 138, C.A.D. 925 (1967).

under item 609.88, *supra,* is the proper classification. Plaintiff's claim under the basket provision, item 657.20, not being as specific as item 609.88, *supra,* is therefore overruled.

Judgment will be entered accordingly.

RAO and NEWMAN, JJ., concur.

SCHEDULE "A"
AND
SCHEDULE OF CASES

| Protest | Plaintiff | Entry |
|---|---|---|
| 65/2528–18654 | Pistorino & Company, Inc. | A–1074 |
| 64/14051–18205 | | A–729 |
| 64/14077–18245 | | A–602 |
| 65/9624–18803 | | A–1148 |
| 65/15705–19017 | | A–1686 |
| 65/15707–19019 | | A–2170 |
| 65/15709–19021 | | A–2449 |
| 65/15711–19023 | | A–2765 |
| 65/15712–19024 | | A–2849 |
| 65/15713–19025 | | A–2883 |
| 65/15714–19026 | | A–3066 |
| 65/15715–19027 | | A–3434 |
| 65/15716–19028 | | A–3505 |

Entries retained for appeal time.