59 CCPA

**COMMERCIAL SHEARING & STAMP-
ING COMPANY, Appellant,**

v.

**The UNITED STATES, Appellee,**

(Guadalupe Industrial Supply Company,
Inc., Party-in-Interest.)

**Customs Appeal 5428**

United States Court of Customs
and Patent Appeals.

Aug. 31, 1972.

Worley, C. J., did not participate in
the decision of the case.

Eugene L. Stewart, Washington, D. C.
(Lincoln & Stewart, Washington, D. C.),
attorneys of record, for appellant; Mat-
thew A. Kane, Washington, D. C. (Kane
& Koons, Washington, D. C.), of counsel.

L. Patrick Gray, III, Asst. Atty. Gen.,
Andrew P. Vance, Chief, Customs Sec-
tion, Joseph I. Liebman, New York City,
for the United States.

George H. Spencer, San Antonio, Tex.
(Clemens, Knights, Weiss & Spencer),
San Antonio, Tex., Stephen H. Philbin,
II, Dallas, Tex. (Locke Purnell, Boren,
Laney & Neely), Dallas, Tex., for par-
ty-in-interest for appellee.

Before WORLEY, Chief Judge, and
RICH, ALMOND, BALDWIN, and
LANE, Judges.

LANE, Judge.

This appeal is by an American Manu-
facturer, plaintiff below, and is from
the decision and judgment of the United
States Customs Court, Third Division,
65 Cust.Ct. 91, C.D. 4060, 317 F.Supp.
750 (1970), holding that imported steel
plates, pressed to a hemispherical shape,

were properly classified by the collector as included in "angles, shapes, and sections," under item 609.80 of the Tariff Schedules of the United States (TSUS). Appellant claims that the hemispherical items should be classified as other articles of metal which are not more specifically provided for elsewhere in the tariff schedules under item 657.20. We affirm.

The schedules and headnotes involved read as follows:

Schedule 6, Part 2, Subpart B:

*Subpart B headnotes:*

1. This subpart covers iron and steel, their alloys, and their so-called basic shapes and forms, and in addition covers iron or steel waste and scrap.

 \* \* \* \* \* \*

3. *Forms and Conditions of Iron or Steel.*—For the purposes of this subpart, the following terms have the meanings hereby assigned to them:

(a) *Ingots:* Castings resulting from the solidification of molten steel and having a columnar form suitable for working by rolling or forging.

(b) *Blooms and billets:* Semifinished products generally of rectangular or circular cross section, having a length several times greater than the maximum cross-sectional dimension, and if rectangular, a width less than 4 times the thickness. A bloom is at least 36 square inches in cross-sectional area; a billet is less than 36 square inches but not less than 3 square inches in cross-sectional area.

(c) *Slabs and sheet bars:* Semifinished products of rectangular cross section having a width of at least 4 times the thickness. A slab is not less than 2 inches and not over 6 inches in thickness; a sheet bar is less than 2 inches in thickness.

(d) *Bars:* Products of solid section not conforming completely to the re-spective specifications set forth herein for blooms, billets, slabs, sheet bars, wire rods, plates, sheets, strip, wire, rails, joint bars, or tie plates, and which have cross sections in the shape of circles, segments of circles, ovals, triangles, rectangles, hexagons, or octagons. *Deformed concrete reinforcing bars* are hot rolled steel bars, of solid cross section, having deformations of various patterns on their surfaces.

(e) *Hollow drill steel:* A hollow steel product in any cross section suitable for use in making mining drills or mining drill rods, with the largest internal cross-sectional dimension not greater than one-third of the largest external cross-sectional dimension.

(f) *Wire rods:* A coiled, semifinished, hot-rolled product of solid cross section, approximately round in cross section, not under 0.20 inch nor over 0.74 inch in diameter.

(g) *Plates and sheets:* Plates are flat rolled products whether or not corrugated or crimped, in coils or cut to length, 0.1875 inch or more in thickness and, if not cold rolled, over 8 inches in width, or if cold rolled, over 12 inches in width. Sheets are flat rolled products, whether or not corrugated or crimped, in coils or cut to length, under 0.1875 inch in thickness and over 12 inches in width. For the purposes of this subpart—

(i) the term *"black plate"* refers to cold rolled steel sheets, not coated, under 0.0142 inch in thickness;

(ii) the term *"tin plate and tin coated sheets"* refers to tin coated steel sheets; and

(iii) the term *"terne plate and terne coated sheets"* refers to steel sheets coated with terne metal (a lead-tin alloy).

(h) *Strip:* A flat rolled product, whether or not corrugated or crimped, in coils or cut to length, under 0.1875

inch in thickness, and if cold rolled, over 0.50 inch but not over 12 inches in width, or, if not cold rolled, not over 12 inches in width.

(i) *Wire:* A finished, drawn, non-tubular product, of any cross-sectional configuration, in coils or cut to length, and not over 0.703 inch in maximum cross-sectional dimension. The term also includes a product of solid rectangular cross section, in coils or cut to length, with a cold-rolled finish, and not over 0.25 inch thick and not over 0.50 inch wide.

(j) *Angles, shapes, and sections:* Products which do not conform completely to the respective specifications set forth herein for blooms, billets, slabs, sheet bars, bars, wire rods, plates, sheets, strip, wire, rails, joint bars, or tie plates, and do not include any tubular products.

(k) *Rails:* Hot-rolled steel products, weighing not less than 8 pounds per yard, with cross-sectional shapes intended for carrying wheel loads in railroad, railway, and crane runway applications. Rails may be punched or not punched.

(l) *Joint bars:* Hot-rolled steel products designed to connect the ends of adjacent rails in track. Joint bars are usually punched or slotted.

(m) *Tie plates:* Hot-rolled steel products used to support rails in track, to maintain track gauge and protect the ties. Tie plates are punched to provide holes for spikes and have one or two shoulder sections as rail guides.

\* \* \* \* \* \*

[Tariff Item:]

Angles, shapes, and sections, all the foregoing, of iron or steel, hot rolled, forged, extruded, or drawn, or cold formed or cold finished, whether or not drilled, punched, or otherwise advanced; sheet piling of iron or steel:

Angles, shapes, and sections:
 Hot rolled; or, cold formed and weighing over 0.29 pound per linear foot:
 Not drilled, not punched, and not otherwise advanced:

609.80 Other than alloy iron and steel .. 0.1¢ per lb.

\* \* \* \* \*

Schedule 6, Part 3, Subpart G:

*Subpart G headnotes:*

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedule:

\* \* \* \* \* \*

[Tariff Item:]
 Articles of iron or steel, not coated or plated with precious metal:

\* \* \* \* \* \*

 Other articles:

\* \* \* \* \* \*

657.20 Other .................... 19% ad val.

The extensive record includes the testimony of eight witnesses for appellant, one witness for appellee, and four witnesses on behalf of the party-in-interest, as well as various documentary and physical exhibits.

The imported article is a hemispherical steel tank head 37″ in inside diameter and having a minimum thickness of 0.2108″. The tank heads were made by cutting a sheet of steel plate in a cold condition to a circular shape and then pressing the circular shape in a hydraulic press, with male and female dies, into a hemispherical shape. The resulting flange was cut off leaving a hemispherical article for subsequent use as tank heads or ends of 500-gallon pressure tanks. The imported articles are described on the entry invoice as steel plates, specifications ASTM A-285-C, cut and pressed to hemispherical shape. The above brief description of the imported tank heads and their method of manufacture is fully supported by the record.

■ Appellant contends that the common meaning and the commercial meaning of the term "angles, shapes, and sections" in item 609.80 excludes articles such as the imported tank heads. It is appellant's position that the term "angles, shapes, and sections" is limited

to hot rolled and cold formed products of a basic steel mill. The trial court found, and we agree, that the purpose of part 2 of schedule 6 was to cover completely in an organized systematic manner, the classification of base metals. Headnote 3(j) defines angles, shapes, and sections as products which do *not* conform completely to the respective specifications specifically set forth in the headnotes for blooms and billets, slabs and sheet bars, bars, wire rods, plates and sheets, strip, wire, rails, joint bars, or tie plates, and states that angles, shapes, and sections do not include any tubular products. The schedule for item 609.80 specifies angles, shapes, and sections, all of the foregoing, of iron or steel, hot rolled, forged, extruded, or drawn or cold formed or cold finished, whether or not drilled, punched, or otherwise advanced, and does not mention "basic steel mill." We find, as the evidence establishes, that the hemispherical product in this litigation is a "cold formed shape." We further conclude that the tariff meaning in this case is plainly manifest, simple and clear. It is not necessary in such a situation to resort to dictionaries, textbooks, scientific treatises, governmental publications, the Tariff Classification Study, or the provisions of the Brussels Nomenclature. F. L. Smidth & Co. v. United States, 409 F.2d 1369, 56 CCPA 77, C.A.D. 958 (1969). We find that the language of item 609.-80 is unambiguous in its coverage of the instant merchandise. The plain words of the statute, particularly the inclusion of cold formed shapes, refute appellant's contention that "angles, shapes, and sections" are limited to articles produced in a basic steel mill. The record contains ample evidence that angles, shapes, and sections may be formed in a rolling mill, and it is also clear that "shapes" may be produced by forging, extruding, drawing, and may be cold formed or cold finished.

 Appellant also contends that the imported tank heads cannot be classified under item 609.80 because they are not of uniform cross-section throughout their length and do not weigh over 0.29 pound per linear foot. The lower court weighed the conflicting testimony on this point and found that the presumption that the imported hemispherical shapes meet the TSUS weight specification was not overcome. We find that there is substantial evidence to support the lower court's finding on this issue and that its determination is not clearly contrary to the weight of the evidence. We will not disturb this finding. United States v. F. W. Myers & Co., Inc., 45 CCPA 48, 52, C.A.D. 671 (1958).

The presumption of correctness attaching to the classification in the instant case has not been overcome by appellant. The evidence here does not establish the impropriety of that classification nor does it establish the applicability of the specified alternative miscellaneous classification. United States v. National Starch Products, Inc., 318 F.2d 737, 50 CCPA 1, C.A.D. 809 (1962), cert. denied, 373 U.S. 923, 83 S.Ct. 1525, 10 L.Ed.2d 422 (1963).

The judgment below is affirmed.

Affirmed.

WORLEY, C. J., did not participate in the decision of this case.