SANDVIK STEEL, INC. *v.* UNITED STATES

---

Court Nos. 66/15301, etc.

(Decided September 17, 1975)

*Rode & Qualey* (*John S. Rode* of counsel) for the plaintiff.
*Rex E. Lee*, Assistant Attorney General (*John A. Gussow*, trail attorney), for the defendant.

NEWMAN, Judge: This action, covering 28 consolidated protests concerns the proper dutiable classification of merchandise invoiced as "band steel", imported from Sweden and entered at the port of New York.

The merchandise was assessed with duty at the rates of 19 or 17 per centum ad valorem, depending upon the date of entry, pursuant to item 657.20 of the Tariff Schedules of the United States, or under item 657.20 as modified by T.D. 68–9, providing for articles of iron or steel which are not more specifically provided for elsewhere in the tariff schedules.

Plaintiff claims that the merchandise is more specifically provided for as angles, shapes, and sections—drilled, punched, or otherwise advanced—under item 609.84 or item 609.84 as modified by T.D. 68–9, at the rates of 7.5 or 7 per centum ad valorem, depending upon the date of entry; and under item 609.86, or item 609.86 as modified by T.D. 68–9, at the rates of 11.5 or 10.5 per centum ad valorem, depending upon the date of entry.[1] Classification under items 609.84 and 609.86 depends upon, *inter alia*, whether the merchandise is "Other than alloy iron or steel" (item 609.84) or "Alloy iron or steel" (item 609.86).

Plaintiff's additional claims in its complaints under items 608.87 and 608.88, which were not pursued at the trial or in plaintiff's brief, are deemed abandoned.

I have concluded that the protests must be overruled.

---

[1] Item 609.86 also imposes "additional duties" (see headnote 4, schedule 6, part 2, subpart B).

▐▌

STATUTES INVOLVED [2]

Assessed under:

Schedule 6, part 3, subpart G:

> Subpart G headnote:
>
> 1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.
>
> > * * * * * * *
>
> Articles of iron or steel, not coated or plated with precious metal:
>
> > * * * * * * *
> >
> > Other articles:
> >
> > > * * * * * * *

657.20 Other _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ ***

Claimed under:

Schedule 6, part 2, subpart B:

> Part 2 headnotes:
>
> 1. This part covers * * * base metals * * * and their so-called basic shapes and forms * * *. * * * This part does not include—
>
> > * * * * * * *
> >
> > (iv) other articles specially provided for elsewhere in the tariff schedules, or parts of articles.
>
> > * * * * * * *
>
> Subpart B headnotes:
>
> 1. This subpart covers iron and steel, their alloys, and their so-called basic shapes and forms, and in addition covers iron or steel waste and scrap.
>
> > * * * * * * *
>
> 3. Forms and Condition of Iron or Steel.—For the purposes of this subpart, the following terms have the meanings hereby assigned to them:
>
> > * * * * * * *
> >
> > (j) Angles, shapes, and sections: Prod-

---

[2] The applicable rates of duty are omitted as they depend upon the date the merchandise was entered. The reduced rates are predicated upon T.D. 68-9.

ucts which do not conform completely to the respective specifications set forth herein for blooms, billets, slabs, sheet bars, bars, wire rods, plates, sheets, strip, wire, rails, joint bars, or tie plates, and do not include any tubular products.

\* \* \* \* \* \* \*

Angles, shapes, and sections, all the foregoing, of iron or steel, hot rolled, forged, extruded, or drawn, or cold formed or cold finished, whether or not drilled, punched, or otherwise advanced; sheet piling of iron or steel:

Angles, shapes, and sections:

Hot rolled; or, cold formed and weighing over 0.29 pound per linear foot:

\* \* \* \* \* \* \*

Drilled, punched, or otherwise advanced:

| | | |
|---|---|---|
| 609.84 | Other than alloy iron or steel_____ | \* \* \* |
| 609.86 | Alloy iron or steel_____ | \* \* \* |

## The Record

The record consists of an oral stipulation of the parties; the testimony of two witnesses for plaintiff and one witness for defendant;[3] various exhibits submitted by both parties; and the official papers.

The pertinent facts are these:

The subject merchandise comprises conveyor belts and belting imported in coils. By oral stipulation, the parties have agreed that the "merchandise is *either* 'steel' or 'alloy iron or steel' as those terms are defined in schedule 6, part 2, subpart B, headnote 2(g) and headnote 2(h)" (emphasis added) (R.4). The specifications of the merchandise and processing performed by the manufacturer in Sweden, Sandvik AB, varied considerably from shipment to shipment, as the following facts will demonstrate:

Type or grade of steel: Carbon or stainless steel.

Width: From 8 to 154 inches.

Length: Up to 600 feet.

Thickness: From .016 to .080 inch.

---

[3] Plaintiff's witnesses were Mr. Arve Larsson, president of Sandvik Conveyor, Inc., and Mr. Bertil Annerhed, manager of the conveyor department of the exporter, Sandvik AB, Sweden. Defendant's witness was Mr. Edward Scott, president of Handy and Harman, Metalsmiths Division, a manufacturer of conveyor belts.

Weight: Minimum 0.42 pound per linear foot (for 8 inch width and .016 inch thickness)

The merchandise was manufactured from cold-rolled carbon or stainless steel coil stock, which was straightened to reduce or remove "side camber", flattened, slit to specified widths, and then edge finished. In some entries the belting was produced by the manufacturer by welding individual bands together longitudinally to achieve wider widths. Also, in some entries the merchandise when imported was perforated, ground to close tolerances, polished, or the ends prepared for "final jointing" (R. 24).

The "majority" of plaintiff's importations of the subject merchandise were placed in its warehouse inventory to fill customer orders. Such inventory merchandise was cut after importation to the required length from the imported coils and prepared by plaintiff in accordance with the particular customer's requirements. Thus, in certain instances plaintiff added rubber to the bottom side of a belt "for the purpose of tracking it in a grooved terminal pulley on the conveyer" (R. 103), welded fixtures or accessories to a belt (such as side retainer strips), polished a belt to give it a high reflective finish, slit a belt to a special width, and joined several belts together to form longer special lengths.

The importations were used as belts or belting for conveyor systems in a wide range of industries that require mechanical handling, such as the food technology and chemical industies. In a majority of cases, plaintiff shipped belts to its customers which were open ended and made endless at the place of installation.

### CONTENTION OF THE PARTIES

Plaintiff contends that the merchandise is a "material" since "it is actually 'commercially capable' of other uses [other than belt conveyors] and is not 'ready for use' as imported". It is further urged that "[t]he protested merchandise, as imported, is a basic shape or form of steel, sheet, which does not conform completely to the TSUS specifications for 'sheet'; therefore, the merchandise is classifiable under Item 609.84 or 609.86, TSUS, as 'Angles, shapes, and sections . . . [D]rilled, punched or otherwise advanced: . . .' ". And finally, plaintiff argues that classification under item 609.84 or 609.86, TSUS, is more specific than classification under item 657.20.

Defendant contends "that the subject importations—specially manufactured and sold as conveyor belting—is a finished article of commerce, not commercially capable of other uses, and not any 'material' as embraced by plaintiff's claims". Accordingly, defendant insists that such finished or completed article of commerce is excluded from the purview of items 609.84 and 609.86.

84

1.

From the positions of the parties, it is apparent that central to the determination of whether the importations are properly dutiable as angles, shapes, and sections is the issue of whether they are a "material".

Pistorino & Company, Inc. v. United States, 69 Cust. Ct. 48, C.D. 4373, 350 F. Supp. 1392 (1972), is a case in point. There, metal stampings or blanks made from strip, dedicated to use in the manufacture of latch needles (knitting machine needles), which required substantial additional processing, were held properly dutiable as angles, shapes, and sections under item 609.88 rather than as unfinished latch needles under item 670.58. Pertinent to the provisions for angles, shapes, and sections are the following comments by Judge Ford, writing for the Second Division (69 Cust. Ct. at 53–54):

> * * * According to the Tariff Classification Study, Schedule 6, page 89, subpart B sets forth an orderly systematic arrangement which would apply to iron and steel, their alloys, and their basic shapes and forms in addition to iron and steel waste and scrap. It therefore logically follows that the provision for angles, shapes and sections includes a more advanced product than item 609.13 [strip] * * * but is still a material. Burn Strauss, Inc. v. United States, 62 Cust. Ct. 664, C.D. 3845, 305 F. Supp. 14 (1969). It is to be noted that the superior heading to item 609.88 includes the language "whether or not drilled, punched, or otherwise advanced." This is a clear indication that an advancement even to the point of dedication was intended to be included therein so long as the article still remains material. Commercial Shearing & Stamping Company v. United States (Guadalupe Industrial Supply Company, Inc., Party in Interest), 65 Cust. Ct. 91, C.D. 4060, 317 F. Supp. 750 (1970) [aff'd, 59 CCPA 203, C.A.D. 1067, 464 F. 2d 1048 (1972)]. [Emphasis added.]

> We have no difficulty in finding that the imported blanks are shapes which do not conform to the specifications set forth in headnote 3, schedule 6, part 2, subpart B. We further find that said blanks are dedicated to use as latch needle blanks but are not unfinished latch needles. * * *

In John V. Carr & Son, Inc. v. United States, 72 Cust. Ct. 19, C.D. 4500 (1974), certain side rails dedicated for, and solely used as, parts of railroad hopper cars were held properly dutiable as "parts" of railroad or railway cars under item 690.15, rather than as "angles, shapes, and sections" under item 609.80. Judge Maletz rejected the plaintiff's argument that the rails were materials requiring substantial further processing, finding instead that "in their imported condition, the in-

volved rails were virtually ready for use only as a part of the railroad stock described in item 690.15 requiring as they did merely insubstantial further processing" (72 Cust. Ct. at 25). Significantly, the court also commented (72 Cust. Ct. at 27–29):

> It may well be that most angles, shapes and sections are *ultimately* dedicated and used as parts of articles and that such *ultimate* use determines the form in which the angles, shapes and sections are made. See *United States* v. *The Singer Manufacturing Company*, 37 CCPA 104, 106, 107, C.A.D. 427 (1950). But this scarcely means that all angles, shapes and sections are parts *per se*. Thus, if in its imported condition, an angle, shape or section has been processed or advanced in manufacture *only* to a point where substantial additional processing is necessary before it can be used as a part of a given article, the import would not be classifiable as a "part," but rather would be considered a material and thus (if meeting the other statutory requirements) classifiable under a provision for angles, shapes and sections. See e.g., *United States* v. *The Singer Manufacturing Company, supra*, 37 CCPA 104; *Associated Metals & Minerals Corp.* v. *United States, supra*, 65 Cust. Ct. 586.

> \* \* \* \* \* \* \*

> Moreover, even though many angles, shapes and sections may be advanced to the point where they are dedicated to use as parts, they still would be classifiable under the provisions for angles, shapes and sections if no specific provision for the part exists. For example, in *Commercial Shearing & Stamping Company* v. *United States, supra*, it was held that hemispherical shapes or heads—which were chiefly used as end closures on pressure containers designed and used for the transport and storage of compressed gases—were properly classified by the government as angles, shapes and sections under item 609.80—the same item that is involved here—rather than as articles of iron or steel, not specially provided for, under item 657.20, as claimed by plaintiff. While the record showed that the imported merchandise was a part of a metal pressure container designed and used for the transport and storage of compressed gases, item 640.10, which covers such containers, does not provide for parts. [Footnote reference omitted.] For that reason, classification of the imported shapes as a part under item 640.10 was precluded and the articles were held properly classified as angles, shapes and sections under item 609.80—which item, the court held, was relatively more specific for the hemispherical shapes, in the condition imported, than item 657.20, the general provision for articles of iron or steel, not specially provided for.

In *Commercial Shearing & Stamping Company* v. *United States (Guadalupe Industrial Supply Company, Inc., Party-in-Interest)*, 65 Cust. Ct. 91, C.D. 4060, 317 F. Supp. 750 (1970), aff'd, 59 CCPA 203, C.A.D. 1067, 464 F.2d 1048 (1972), the Government's classification of certain hemispherical shapes or tank heads for pressure tanks as

angles, shapes, and sections was upheld as against plaintiff's claim under item 657.20. Respecting the matter of "finished" articles dedicated to a particular use, Judge Landis, writing for the Third Division, stated (65 Cust. Ct. at 104):

> We read TSUS to concede that the term "angles, shapes, and sections" may apply to articles finished in the sense that their shape and size dedicate them to a particular use or, minimally, dictate what they can be used for and, therefore, to classify them by the degree to which they have been advanced toward any use. Unless such a literal interpretation is placed upon the relevant classifying terms, the distinction between angles, shapes, and sections "not drilled, not punched, and not otherwise advanced", in TSUS item 609.80 and angles, shapes, and sections "drilled, punched, or otherwise advanced", in TSUS item 609.84, is meaningless. * * *

The articles in the following two cases were held to be excluded from the provisions for angles, shapes, and sections since they were finished, ready to use articles of commerce, rather than materials requiring further processing: *Trans-Atlantic Company* v. *United States*, 70 Cust. Ct. 243, C.D. 4459 (1973) (iron shelf brackets); and *Burn Strauss, Inc.* v. *United States*, 62 Cust. Ct. 664, C.D. 3845, 305 F. Supp. 14 (1969) (wading pool walls). Thus, in *Trans-Atlantic* the court observed (70 Cust. Ct. at 248):

> Defendant contends that while the rolled tee, from which the shelf bracket is made, is a basic shape or form, the importation is a completely fabricated article upon which no further work is required to fit it for its specific use and therefore is an article of commerce and no longer a basic shape or form. *Stengel* v. *United States*, 2 Ct. Cust. Appls. 137, T.D. 31663 (1911).

> It is noted that the superior heading to item 609.84, *supra*, contains the language "whether or not drilled, punched, or otherwise advanced." This is a clear indication of an intent to include an advancement even to the point of dedication so long as the article remains material. *Commercial Shearing & Stamping Company* v. *United States* (*Guadalupe Industrial Supply Company, Inc., Party-in-Interest*), 65 Cust. Ct. 91, C.D. 4060, 317 F. Supp. 750 (1970), *aff'd*, 59 CCPA 203, C.A.D. 1067 (1972).

> The imported merchandise is without dispute a finished article known in the trade as a shelf bracket. It has therefore passed the state of being material and is in fact a separate and distinct article of commerce. Such an article is not within the purview of item 609.84, *supra*.

Finally, in my very recent decision, *Sandvik Steel, Inc.* v. *United States*, 75 Cust. Ct. 68, C.D. 4609 (1975), shoe die knife steel, a product made from strip (and not conforming completely to the specifi-

cations thereof in headnote 3(h), schedule 6, part 2, subpart B), but nevertheless a material dedicated to use in the manufacture of clicker dies, was held to be more specifically provided for as angles, shapes, and sections under item 609.84 or item 609.88, depending upon the weight per linear foot, than as articles of iron or steel, not more specifically provided for elsewhere in the tariff schedules, under item 657.20.

I am clear from the above cited decisions that so long as merchandise remains a "material", dedication to a particular use does not foreclose its classification as angles, shapes, and sections. With this principle in mind, we now turn to a discussion of the record.

2.

The record discloses that the merchandise varied in several significant respects. In a "majority" (R. 73) of the entries, belting was placed in plaintiff's warehouse inventory, cut to the required lengths, and further processed according to the needs of the ultimate users. However, in other entries the merchandise was manufactured by the exporter "to specification" (R. 54) for specific users. Thus, the invoices show that some conveyor belts were predestined for specific customers in the rubber and baking industries.[4] Hence, the latter merchandise did not constitute a mere "material".

Additionally, the testimony of plaintiff's witness Annerhed shows that in some shipments the manufacturer prepared the ends of the belts for "final jointing" (R. 24). Joint preparation by the exporter is also evident from many of the invoices.[5] In those instances where the manufacturer prepared the ends for final jointing, the only further preparation required to make an endless conveyor belt was joining the prepared ends together by riveting or welding.[6] Such joinder of the ends is not the "substantial further processing or manufacturing" required to constitute the merchandise a "material". Apposite here is the following comment by Judge Maletz in Carr (72 Cust. Ct. at 26):

> * * * Indeed, in the circumstances of a case such as this, in order to constitute a mere material, substantial further processing or manufacturing would be necessary after importation before the merchandise became a completed product or a completed part of a product. * * *

---

[4] For example, see the invoices covered by protests 66/15301 (National Biscuit Co.), 66/15302 (Sunshine Biscuit Co.), 66/30262 (U.S. Rubber Co.), 66/32073 (National Biscuit Co.), 66/44228 (Murry Biscuit Co.), 66/4758 (Chicago Bakery Addition), 67/12197 (Greer Oven), 67/21553 (entry 786689) (Greer Oven).

[5] See for example the invoices covered by the following protests: 66/15301, 66/15302, 66/26272 (entry 958398), 66/32383 (entry 1019811), 66/42979, 66/44228, 66/47578, 66/48605, 66/49244 (entry 935900), 67/31309, 67/70699, 67/71503, 68/19334, 68/32512.

[6] It would be unreasonable to assume that where the ends were prepared by the manufacturer for final jointing, the merchandise was cut after importation to shorter lengths and the ends again prepared for final jointing by the importer.

In sum, only the "inventory" or stock belting, which was not precut or marked in any way to indicate the ultimate length of a belt, and which required joint preparation *after* importation, in my view, is a "material". Such inventory merchandise was not dedicated to the making of any particular conveyor belts, and therefore the identity of the individual belts was not fixed with certainty. *Cf. United States v. The Harding Co.*, 21 CCPA 307, T.D. 46830 (1933); *The Harding Co. et al. v. United States*, 23 CCPA 250, T.D. 48109 (1936); *American Import Co. v. United States*, 26 CCPA 72, T.D. 49612 (1938); *Sandvik Steel, Inc. v. United States*, 66 Cust. Ct. 12, C.D. 4161 (1971); *Sandvik Steel, Inc. v. United States*, 75 Cust. Ct. 68, C.D. 4609 (1975). Unfortunately for plaintiff, the testimony of its witnesses was general in nature and not directed to any specific entries. Therefore, the record fails to identify those "majority" entries comprising the inventory merchandise.

3.

A further failure of proof relates to plaintiff's burden under items 609.84 and 609.86 of establishing that the merchandise was "cold formed".[7] Although the record shows that the *coil stock* (strip or sheet material) used to manufacture the belting was cold rolled, Annerhed's testimony and the invoices[8] indicate that some of the *belting* (which is claimed to be angles, shapes, and sections) was produced by a longitudinal welding process (R. 24, 34). However, that welding process was not shown to be a cold-forming operation. And I do not regard longitudinal welding as merely an "advancement". Fundamentally, the process by which a shape was created cannot at the same time constitute an "advancement". *Commercial Shearing, supra,* 65 Cust. Ct. at 105.

Finally, under items 609.84 and 609.86 it was plaintiff's burden to identify those shipments of belting which were "Other than alloy iron or steel" (item 609.84) and those which were "Alloy iron or steel" (item 609.86), the two grades of iron or steel angles, shapes, and sections being dutiable at different rates.

The record establishes that the shipments were either carbon steel or stainless steel. Although plaintiff submitted no evidence to that effect, the court may take judicial notice of the fact that "carbon steel" is a nonalloy steel, while stainless steel is an alloy steel. Further, the parties have orally stipulated that the "merchandise is *either* 'steel' or 'alloy iron or steel' as those terms are defined in schedule 6, part 2, subpart B, headnote 2(g) and headnote 2(h)" (emphasis

---

[7] Plaintiff does not assert that the merchandise was produced by hot rolling.

[8] See for example the invoices covered by the following protests: 66/15301, 66/30262, 66/32073, 67/12197, 67/21553 (entry 786689), 68/41223, 68/54532, 69/10772, 69/17262.

added) (R. 4). Unfortunately for plaintiff, again, neither this stipulation nor the testimony of its witnesses identifies the band steel in any particular shipment as one type of steel or the other. Moreover, many of the invoices do not describe the type of steel (carbon or stainless steel) in the shipment.[9] Consequently, respecting those entries wherein the type or grade of steel was not identified, the court has no way of determining whether the shipment was other than alloy steel (item 609.84)[10] or alloy steel (item 609.86), which fact as noted above, was part of plaintiff's burden of proof in each entry.

In view of plaintiff's failure of proof respecting the matters discussed herein, the protests are overruled. Judgment will be entered accordingly.

---

[9] For example see the invoices covered by the following protests: 66/15301, 66/30262, 66/32073, 66/47578, 66/49244 (entry 935900), 67/12197, 68/3122, 68/4315.

[10] Also, the court has no way of determining whether the "additional duties" provided for in headnote 4, schedule 6, part 2, subpart B are applicable.