SUMITOMO SHOJI CHICAGO, INC. *v.* UNITED STATES

Court Nos. 70/44233, etc.

(Decided September 30, 1975)

*Barnes, Richardson and Colburn* (*James H. Lundquist* and *Peter J. Fitch* of counsel) ; *Glenn A. McTavish*, co-counsel, for the plaintiff.
*Rex E. Lee*, Assistant Attorney General (*Joseph I. Liebman*, trial attorney), or the defendant.

LANDIS, Judge: This action covers five protests consolidated for trial at Chicago. The merchandise on trial, so to speak, consists of steel plate, pressed to an ellipsoid shape, imported from Japan. Plaintiff in its complaint [1] alleges that the ellipsoid shapes, in the condition imported, were not properly classified under the Tariff Schedules of the United States (TSUS).

---

[1] At trial, in open court, plaintiff moved, without objection, to amend the complaint. The motion was granted and an amended complaint filed.

Customs officials at Chicago classified the ellipsoid shapes under TSUS item 657.20 which, in pertinent part, is as follows:

SCHEDULE 6. – METALS AND METAL PRODUCTS

Part 3. – Metal Products

Subpart G. – Metal Products Not Specially Provided For

Subpart G headnote:

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

\* \* \* \* \* \* \*

Articles of iron or steel, not coated or plated with precious metal:

\* \* \* \* \* \* \*

Other articles:

\* \* \* \* \* \* \*

657.20        Other_____  19% ad val.

Plaintiff claims that the ellipsoid shapes are properly classifiable under TSUS item 609.80 or, in the alternative, under TSUS item 609.13. Both of those items appear in schedule 6, part 2 of the tariff schedules where they are provided for, in pertinent context, as follows:

SCHEDULE 6. – METALS AND METAL PRODUCTS

Part 2. – Metals, Their Alloys, and Their Basic Shapes and Forms

Part 2 headnotes:

1. This part covers precious metals and base metals \* \* \* their alloys, and their so-called basic shapes and forms, and, in addition, covers metal waste and scrap. \* \* \* This part does not include—

\* \* \* \* \* \* \*

(iv) other articles specially provided for elsewhere in the tariff schedules, or parts of articles.

\* \* \* \* \* \* \*

Subpart B. – Iron or Steel

Subpart B headnotes:

\* \* \* \* \* \* \*

3. Forms and Condition of Iron or Steel.—For the purposes of this subpart, the following terms have the meanings hereby assigned to them:

\* \* \* \* \* \* \*

(g) Plates and sheets: Plates are flat rolled products whether or not corrugated or crimped, in coils or cut to length, 0.1875 inch or more in thickness and, if not cold rolled, over 8 inches in width, or, if cold rolled, over 12 inches in width. Sheets are flat rolled products whether or not corrugated or crimped, in coils or cut to length, under 0.1875 inch in thickness and over 12 inches in width. For the purposes of this subpart—

    (i) the term "black plate" refers to cold rolled steel sheets, not coated, under 0.0142 inch in thickness;

    (ii) the term "tin plate and tin coated sheets" refers to tin coated steel sheets; and

    (iii) the term "terne plate and terne coated sheets" refers to steel sheets coated with terne metal (a lead-tin alloy).

\* \* \* \* \* \* \*

(j) Angles, shapes, and sections: Products which do not conform completely to the respective specifications set forth herein for blooms, billets, slabs, sheet bars, bars, wire rods, plates, sheets, strip, wire, rails, joint bars, or tie plates, and do not include any tubular products.

\* \* \* \* \* \* \*

Plates, sheets, and strip, all the foregoing, of iron or steel, cut, pressed, or stamped to nonrectangular shape (except as provided in item 609.17):

Other than alloy iron or steel:

\*     \*     \*     \*     \*     \*     \*

609. 13       Valued over 8 cents per pound_    9.5% ad val.

\*     \*     \*     \*     \*     \*     \*

Angles, shapes, and sections, all the fore-going of iron or steel, hot rolled, forged, extruded, or drawn, or cold formed or cold finished, whether or not drilled, punched, or otherwise advanced; sheet piling of iron or steel:
    Angles, shapes, and sections:
        Hot rolled; or, cold formed and weighing over 0.29 pound per linear foot:
            Not drilled, not punched, and not otherwise advanced:

609.80                Other than alloy iron or steel_____    0.1¢ per lb.

Defendant, responding to the complaint, denies plaintiff's claims and for an affirmative defense alleges that if not properly classifiable under TSUS item 657.20, as assessed, then the ellipsoid shapes are properly classifiable as parts of railroad stock under TSUS item 690.35, which provides as follows:

SCHEDULE 6. – METALS AND METAL PRODUCTS

PART 6. – Transportation Equipment

Subpart A. – Rail Locomotives and Rolling Stock

\*     \*     \*     \*     \*     \*     \*

Railroad and railway rolling stock:
690.15     Passenger, baggage, mail, freight and other cars, not self-propelled_____    \* \* \*

\*     \*     \*     \*     \*     \*     \*

Parts of the foregoing articles:

\*     \*     \*     \*     \*     \*     \*

Other:
690.35         Parts of cars provided for in item 690.15 \* \* \*_____    18% ad val.

At the trial, six witnesses testified for plaintiff. Plaintiff also put in evidence ten exhibits, principally photographs and drawings, relevant to the processing of the shapes before and after importation. Defendant introduced no evidence.

In the condition imported, the ellipsoid shapes are undisputedly made by cutting a sheet of steel plate in a cold condition to a circular shape. The circular shape is then placed in a press whence it is pressed into an ellipsoid shape. For transportation purposes, lifting angles are welded to the shape. After importation the shapes are inspected for defects and rust; the lifting angles are removed; the contour of the shape is checked and, if necessary, correctively "bumped". The testimony also establishes that the edge of the shape must be prepared for assembly to a tank cylinder. The edging, which is done on a shape-burning machine, is an exacting process and the type of edge (which may require removing up to five inches of metal) put on the shape must meet critical industry standards for welding the shape to a tank shell or cylinder.

Weighing the above facts, particularly those bearing on the process by which the shape was produced, its condition as imported and the use of the shape as a tank end, I am unable to discern any material difference between these ellipsoid shapes and the hemispherical steel shapes classified in *Commercial Shearing & Stamping Company* v. *United States*, 65 Cust. Ct. 91, C.D. 4060, 317 F. Supp. 750 (1970), *aff'd*, 59 CCPA 203, C.A.D. 1067, 464 F.2d 1048 (1972). Plaintiff *inter alia* cites and relies on *Commercial Shearing* to authorize classification of the ellipsoid shapes under the TSUS superior heading "Angles, shapes, and sections". I conclude that there is little, if any, substance to defendant's opposition in this case to a classification (i.e., angles, shapes, and sections) which it supported in *Commercial Shearing*.

In *Commercial Shearing*, defendant took the position that customs officials at Laredo had correctly classified hemispherical shapes,[2] used as tank ends on pressure containers, under the TSUS heading angles, shapes, and sections. *Commercial Shearing* claimed that hemispherical shapes used as tank ends should be classified as articles of iron or steel, not specially provided for. This court and the court of appeals, upon review of the extensive record, held that *Commercial Shearing* had failed to overcome the presumption of correctness attaching to the classification of the hemispherical shapes under the heading angles, shapes, and sections. The precise holding in that case, it may well be, is legally decisive of nothing in this case. However, the court of appeals, incident to the holding in *Commercial Shearing*, made two observations which strike me as significant with respect to the weight of the evidence in this case and plaintiff's dual burden herein: first, to overcome the presumption of correctness attaching to the classification of

---

[2] The ellipsoid shapes in this case were classified by customs officials at Chicago.

the ellipsoid shapes as articles of iron or steel, not specially provided for, and second, to establish that its claim under TSUS item 609.80 as angles, shapes, and sections is correct.[3] The court of appeals first observed and found that the hemispherical product in *Commercial Shearing* was a "cold formed shape". Upon that finding the court of appeals next observed and concluded that the language of item 609.80 is unambiguous in its own coverage of the hemispherical product. Accordingly, based on the preponderance of evidence of record in this case, I find that the manner in which these ellipsoid shapes were produced is not materially different from the manner in which the hemispherical shapes in *Commercial Shearing* were produced. I conclude that these ellipsoid products are cold formed shapes and that the language "angles, shapes, and sections" of item 609.80 unambiguously covers them.

Plaintiff having overcome the presumption that the ellipsoid shapes are articles of iron or steel not specially provided for by establishing that they are specially provided for under item 609.80, it follows that the only remaining bar to classification under item 609.80 is defendant's affirmative defense claiming that they are properly classifiable as "parts" of railroad stock under item 690.35.[4] No presumption of correctness attaches to defendant's claim under 690.35. *United States v. R. J. Saunders & Co., Inc.*, 42 CCPA 128, 130, C.A.D. 584 (1955). Defendant vigorously contends that the preponderance of the evidence establishes that these ellipsoid shapes are "parts" of railroad stock. I am not so persuaded.

As a matter of law, and as defendant cites, "parts" of articles are excluded from schedule 6, part 2 (under which plaintiff's claimed classifications appear). Classification item 609.80 (angles, shapes, and sections) being under schedule 6, part 2, does not, therefore, include parts of articles.[5] *The Servco Company v. United States*, 68 Cust. Ct. 83, C.D. 4341 (1972), *aff'd*, 60 CCPA 137, C.A.D. 1098, 477 F. 2d 579 (1973). Relevant to the classification of "parts" of an article TSUS provides in a series of General Headnotes and Rules of Interpretation that for the purposes of the schedules:

---

[3] Plaintiff's alternative claim beyond the simple urging in a single paragraph, that the ellipsoid shapes fall within the literal language f item 690.13 provision for plates of iron or steel, cut, pressed, or stamped to nonrectangular shape, valued over 8 cents per pound, is not seriously pressed and does not merit serious consideration. The term "plates" has a meaning assigned by Congress and plaintiff has made no attempt to relate the proofs to the meaning. *Pistorino & Company, Inc.* v. *United States*, 69 Cust. Ct. 48, 53, C.D. 4373, 350 F. Supp. 1392 (1972). A seemingly broad descriptive tariff term is not to be taken as encompassing every article which may literally come within that term but rather only those articles of the type intended by Congress in enacting TSUS. *United States* v. *General Electric Co.*, 58 CCPA 152, 156, C.A.D. 1021, 441 F.2d 1186 (1971).

[4] An affirmative defense, properly established, will tactically defeat a plaintiff's claim even though the customs classification is erroneous. *United States* v. *R. J. Saunders & Co., Inc.*, 42 CCPA 128, 130, C.A.D. 584 (1955).

[5] Schedule 6, part 2, headnote 1(iv), *supra*.

10. General Interpretative Rules. * * *

\* \* \* \* \* \* \*

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part. '

The testimony establishes, as alleged in the complaint, that these ellipsoid shapes were "used as tank ends in the manufacture of cylindrical steel tanks for tank cars in the United States." It is not disputed that a tank car, in common parlance, is a railroad car (i.e., rolling stock) for transporting liquids or gases in bulk.[6] *Cf. F. W. Myers & Co., Inc.* v. *United States*, 57 CCPA 87, C.A.D. 982, 425 F.2d 781 (1970). There is also no question that the ellipsoid shapes in this case were, as defendant puts it, of a size and shape "specially ordered, designed, and constructed" of a grade steel that conformed with ASTM (American Society for Testing Materials) and AAR (American Association of Railroads) specifications applicable to the production of pressure containers including those for tank cars. Defendant, having introduced no proof whatsoever, argues that plaintiff's evidence preponderantly establishes that these ellipsoid shapes were solely used as parts of tanks for railroad stock. Witnesses, however, testified that to their general knowledge, ellipsoid shapes of the kind imported are used "in many other industries" other than railroad production; as tank ends for "stationary storage tanks, above ground * * * [and] below ground"; that ellipsoid shapes "could be used for the enclosure of any type of a shell or body"; and that AAR specifications do not imply a dedication to use tanks for tank cars, but other pressure vessels as well.

Defendant further contends that notwithstanding the testimony that these ellipsoid shapes have uses other than on tanks for tank cars, the burden shifted to plaintiff to establish that ellipsoid shapes belong to a class of articles having a variety of uses, or a chief use other than as parts of railroad tank cars. The evidence, in my opinion, does not probatively establish that these ellipsoid shapes are solely or chiefly used as parts of railroad stock. For the alternative classification, therefore, defendant's burden of proof to establish sole or chief use of ellipsoid shapes as parts of railroad stock remained on defendant and did not shift to plaintiff. *Packard Instrument Co. et al.* v. *United States*, 60 CCPA 66, 68, C.A.D. 1082, 471 F. 2d 636 (1973).

There is no gainsaying that these ellipsoid shapes were in fact actually used as tank ends on containers for tank cars. The evidence

---

[6] *Webster's Third New International Dictionary* (1968).

and plaintiff's admission of that fact, however, goes no further than to establish how the ellipsoid shapes were actually used. Classification as "parts of railroad stock", under rule 10(ij) requires proof that ellipsoid shapes are solely or chiefly used as such. Evidence of actual use does not establish sole or chief use. *United States* v. *John V. Carr & Son, Inc.*, 61 CCPA 41, 45, C.A.D. 1116, 495 F.2d 771 (1974). To comply with the sole or chief use test applicable under rule 10(ij) there must be "evidence regarding use on *a national basis* of * * * [ellipsoid shapes] of the class or kind imported." [Emphasis quoted.] *United States* v. *J. M. Altieri*, 61 CCPA 82, 86, C.A.D. 1127, 500 F.2d 1165 (1974). Defendant does not purport to find any such evidence in this record and I find none.

There is also no evidence which supports defendant's additional point that "even if the imported articles are first considered to be parts of tanks, which tanks are parts of railroad tank cars, they are still dutiable under item 690.35, TSUS [parts of railroad stock], as a part of a part is dutiable, in the absence of a provision for the intermediate part * * * as part of the whole [citations omitted]." [7] The intermediate part referred to by defendant is, of course, the cylinder to which the ellipsoid shape is assembled. There is first of all no showing, and who is to say that a cylinder without ends is part of railroad stock or that there is or is not a specific provision in TSUS for pressure tanks or containers [8] as would exclude classification of the tank or container as a part. To sustain that point, defendant is required to demonstrate that cylindrical tanks (produced in this case for tank cars) as a class or kind are solely or chiefly used as parts of tank cars. *United States* v. *J. M. Altieri*, *supra*. There is no such evidence, either as to the ellipsoid shapes, or the cylinders to which they are assembled. To the contrary, there is testimony that these ellipsoid shapes are used as tank ends on tanks or containers other than for tank cars. The weight of that testimony is assuredly not great. But defendant has not rebutted such testimony and unrebutted testimony is entitled to some weight. *Cf. J. M. Altieri*, *supra*. As easily as the ellipsoid shapes in this case could be called parts of railroad stock, they could just as easily be called parts of tanks with utility other than as tank cars. On this record, therefore, following the reasoning in *Commercial Shearing*, *supra*, I conclude that, as plaintiff claims, the imported ellipsoid shapes are properly classifiable under TSUS item 609.80. All other claims are overruled.

Judgment, under TSUS item 609.80, will enter for plaintiff.

---

[7] Defendant's brief, page 18.
[8] See, TSUS item 640.10.